## CRUGER *vs.* JONES.

Under the provision of the statute, declaring that where a trust shall be expressed in the instrument creating an estate, every sale, conveyance, or other act of the trustees, in contravention of the trust, shall be absolutely void, a mortgage, executed by trustees, upon the trust estate, would be an act contravening a trust to hold the estate and receive its rents and profits and pay them over, from time to time, to the *cestui que trust.*

Such a mortgage being, when executed by the trustees on their own responsibility, absolutely void, would not be rendered valid by receiving the previous sanction of the court.

By a marriage settlement, the greater portion of the wife's real estate was given to her three brothers, their heirs and assigns forever, as trustees, to hold in trust for her; the rents and profits thereof to be subject to her order; and in case she should die before her husband, the property was to be held by them in trust for him, during his life, he maintaining, bringing up, and educating the children and lawful issue of the marriage, in a suitable manner, out of the rents and profits; and upon the husband's death, the property was to be held in trust for his heirs by the wife. The wife died, leaving her husband, and a son, surviving her.

*Held,* 1. That the marriage settlement created in the trustees an estate for the life, at least, of the husband, for his support, and the support of all his descendants by his wife, now born or who might hereafter be born during his life.

2. That neither the estate of the trustees, nor the interest of the beneficiaries, could be assigned or in any manner disposed of; except that the surplus of such rents and profits, beyond the sum necessary for the support and education of the *cestuis que trust,* would be liable in equity to the claims of their creditors, in the same manner as other personal property which cannot be reached by an execution at law.

3. That the only estate in the land, absolutely and directly alienable, was the remainder in fee which, on the death of the wife, became defeasibly vested in her son, and which, subject to the incumbrance of the prior *quasi* life annuity —in no event exceeding half the value—might be effectually mortgaged.

THIS was a suit to determine the validity of a marriage settlement, and to authorize the mortgaging of the trust premises, for building purposes. The facts in the case are, in brief, as follows : Miss Frances Ann Jones was married to John Cruger in 1831, being at the time entitled to a large amount of real estate in and about the city of New-York. At the time of her marriage she was still in her minority. By an indenture, dated the 19th of November, 1833, the greater portion of her property was given to her three brothers, their heirs and assigns forever, as trustees,

Cruger *v.* Jones.

to hold in trust for 'her; the rents and profits thereof to be sub-
ject to her order, and in case she died before her husband, to
be held by them in trust for him, and for his heirs by her. In
March, 1835, she died, leaving her husband and a son, Eugene,
surviving her, the latter being then 3 years of age. In Decem-
ber, 1835, a part of this trust property, consisting of several
buildings in the lower part of the city, was destroyed by fire.
These, John Cruger rebuilt at his own expense. In 1852 he
had a pier, also belonging to this estate, extended, in accordance
with an ordinance of the city, passed at that time. In making
these improvements he spent, in all, some $21,500. He now
prayed for leave to mortgage the trust premises, in order to
reimburse him for these expenditures, which were alleged in
the bill to have been necessary, and which undoubtedly were
so. He also desired to make some further improvements on the
property. Eugene Cruger, the son, who had the remainder in
fee, also desired the father to be reimbursed and the improve-
ments to be made, and was joined with the father as plaintiff in
the suit. The trustees were made defendants. The plaintiffs
prayed, 1. To have the court set aside the marriage settlement
as void; or, 2. To have them declare it expired and ended; or,
3. To have them order the trustees to discharge the premises
from the trusts, and vest them in John Cruger for life, and in
Eugene Cruger in fee simple absolute in reversion; or, 4. To
have the court order the defendants to unite with the plaintiffs
in executing the requisite mortgages.

*Eaton & Kent*, for the plaintiffs.

*D. Lord*, for the defendants.

*By the Court*, Roosevelt, J. Where a trust, says the
statute, shall be expressed in the instrument creating the estate
—which is the case in the present instance—every sale, convey-
ance, or other act of the trustees in contravention of the trust,
shall be *absolutely void*. And is not a mortgage, attended as
it must be with a power of sale, an act contravening a trust

to hold the estate and receive its rents and profits, and pay them over from time to time to the designated beneficiary? True, it is proposed to invest the mortgage money in buildings to be erected on the trust premises; but is it not obvious that should the buildings so erected, from misadaptation, change of fashion, or other cause, become in a measure valueless—an occurrance by no means improbable or unheard of—the whole estate, soil as well as superstructure, might be taken to satisfy the incumbrance? If such a mortgage, then, by the trustees, however *bona fide*, on their own motion, would be "absolutely void," can this court, by any previous judicial sanction, prevent that consequence which the statute has so positively attached to the act? Large as its jurisdiction is, both in law and equity, I know of no such power, even in the supreme court, to dispense with the enactments of the legislature, and make that valid which the law-giver has declared "shall be void." The parties interested sanction (it is said) the act, and desire that it may be done. But the law says, in such a trust, the parties beneficially interested *cannot assign or in any manner dispose of their interest.* How then can their consenting to, or joining in, the mortgage, improve its efficiency? It is void as the act of the trustee, and void as the act of the beneficiary, and must therefore, in this view, be void *in toto*.

There is, however, another aspect of the case which possibly may relieve the plaintiffs of a part of their difficulty. Mr. Cruger, should he wish to raise money to improve the property, may borrow on the security of a judgment lien, and so much of the rents as shall not be necessary for his support, will be liable to the claims of the judgment creditors. (*Statute of Trusts*, § 57.) Under the circumstances, were it not for a condition which will presently be considered, the court might—at all events, having jurisdiction, the decree would be valid—decree the whole life income, with a very inconsiderable exception, to the judgment creditors. Such a judgment and decree, covering the life interest of the father, fortified by a mortgage covering the reversion of the son, would, it seems to me, be ample security for the proposed loan.

The son's interest, whether a defeasible or an absolute vested remainder, is alienable. No trust is, or in such case could have been attached to it beyond his minority—two lives having already intervened, his mother's and his father's—and two lives and a minority being the utmost limit of suspension allowed by law. But although vested and alienable, is it so absolutely? The absolute power of alienation may be suspended by other means than trusts : it may be suspended, as in this instance, by an eventual limitation over. Mr. Cruger's son, although he has survived his mother and his own minority, may still die "in the lifetime of his father," in which case, to use the language of the deed, "upon the death of the said John C. Cruger, the father," the estate is given to the "heirs and assigns" of the son—seemingly not through him and his representatives, and therefore bound by any mortgage he may execute—but as direct and absolute grantees of the immediate parties to the deed of settlement. Now a future contingent limitation, to take effect, if ever, at the expiration of not more than two designated lives in being at the time of making the settlement, suspends by its own nature the absolute power of alienation for such lives, but no longer ; and consequently (viewed only in that aspect,) is not prohibited by law. Such a limitation, I say, although allowable, *ordinarily* suspends alienation. Here, however, as the substituted grantees would be the assigns of young Cruger if he had made a conveyance, and his heirs if he did not, his transfer (operating as an irrevocable appointment of the future estate) would have the same consequences as in the case of an absolute ownership, and would cut off the limitation to his heirs. In other words, he has the same power over the estate *with* the limitation as *without*. With the limitation the absolute estate in fee on his death goes to his heirs or assigns ; without it, if the term assigns includes, as it does, devisees by will, the same result precisely will follow. The son's estate, therefore, by necessary operation of law, although nominally defeasible, is in reality a fee simple absolute, vested now in interest, to take effect in possession, on the death of his father. So that between the two, a perfect mortgage, as already

explained, can be given, with the single qualification that the premises, or rather the estate for life in them held by the trustees, will be charged, till Mr. Cruger's death, with such an annuity as the court, viewing all the circumstances, shall deem reasonable for his and his children's support. That, however absurd the proposition in this instance may seem, he cannot relinquish or dispose of. It is inalienable by statute, and can only be liberated by the same power.

In determining what portion of the rents and profits by way of annuity should be adjudged necessary for the support of the life beneficiary, a difficulty arises from the peculiar condition imposed by the settlement upon his right. The rents, it provides, shall be paid to Mr. Cruger during his life, he " also during his life, and so long as he shall live, maintaining, bringing up, and educating the child and children, and lawful issue (meaning, I suppose, grandchildren) of said marriage, in a suitable manner, by and out of said rents, issues and profits." Do such terms in such a case create a legal right in favor of the children and grandchildren ? or do they merely attach a condition to the principal grant, a non-compliance with which works a forfeiture of the intended benefit ? If a forfeiture, then the son, on a refusal by the father, might immediately enter, and thus liberate the whole estate, and become sole tenant in fee, not in remainder, but in possession, for the object of the trust being in that case terminated, the estate in the trustees would by law immediately cease. But if the terms above quoted, instead of importing a mere condition, were intended to, and actually do, create a legal right in the children of the marriage, living at Cruger's death, and the grandchildren who may afterwards be born during Mr. Cruger's life, a right which, if allowed, could be enforced in a court of equity, another question then arises,—Does the statute permit the creation of such interests ?

A trust, it says, may be created to receive rents and profits, and to apply them to the use of, or according to recent judicial decisions, to pay them to a person during the life of such person, or for a shorter period. Now the maintaining, bringing up and educating of a person, if not by implication confined to his

minority, certainly is to his life; and thus one branch of the requisition is fulfilled. And although "children and issue" may be plural, yet that circumstance is no objection, as the statute says that where the singular number is used, the plural shall equally be comprehended in the provision. But grandchildren, it will be said, may be after-born persons. The statute does not, in terms, confine the trust to persons in being. Its only restriction on this point is, that the persons selected shall be so circumstanced that the trust in their favor will not suspend the absolute power of alienation for more than two lives in being. This suspension, in the nature of things, must be limited to one life, and that in being, to wit, the life of Mr. Cruger. If, then, the condition imposed creates a trust in favor of the children and other issue of the marriage, confined in its duration, as it is, to one designated life in being, it would seem to be clearly valid. And if valid, the interest is inalienable—inalienable because the law expressly says it shall be so, and also because the persons interested, or some of them, the possible grandchildren, are yet to be born; and cannot be ascertained until the death of Mr. Cruger's son, unless he should survive his father, which he may or may not do.

On a resurvey of the whole ground, then, the conclusion would seem to be that the marriage settlement creates in the trustees an estate for the life at least of Mr. Cruger, for his support and the support of all his descendants by his late wife, now born, or who may hereafter be born during his life; that neither the "estate" of the trustees, nor the "interest," as it is called, of the beneficiaries, can be "assigned or in any manner disposed of," except that "the surplus of such rents and profits beyond the sum that may be necessary for the education and support of the person (or persons) for whose benefit the trust is created, shall (will) be liable in equity to the claims of the creditors of such person (or persons) in the same manner as other personal property which cannot be reached by an execution at law," (1 *R. S.* 729,) and that the only estate in the land now absolutely and directly alienable, is the remainder in fee, which on the death of Mrs. Cruger became defeasibly vested in the son,

now of full age, and which therefore, subject to the incumbrance of the prior *quasi* life annuity, in no event it would seem exceeding half the value, may be effectually mortgaged to any person willing to make the desired loan.

[NEW-YORK GENERAL TERM, September 27, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]