HELEN REID, a LUNATIC, BY WM. H. REID, COMMITTEE,
ETC., RESPONDENT, *v.* HOSEA SPRAGUE, IMPLEADED WITH
GEORGE J. J. BARBER AND CATHARINE BARBER,
APPELLANT.

*Trust — right of cestui que trust to follow trust property — assignee of bond and
mortgage.*

A testatrix devised all her estate of which she was possessed, or which was held
in trust for her, to her daughter Catharine, the income to be expended for the
support of her daughter Helen during her life with remainder to Catharine,
and directed her "trustee" to convey her real estate in accordance therewith.
Catharine sold a piece of the real estate and took back a mortgage payable two
years after the death of Helen. Catharine after having applied the interest of
the mortgage for many years to the support of Helen, assigned the mortgage
to one Sprague, to secure a note then given to him by her husband.

Sprague having refused to apply the interest to the support of Helen, a lunatic,
this action was brought by her committee to secure the payment thereof.
*Held* (1), that under the will Catharine became a trustee for the benefit of Helen;
(2), that the mortgage was a portion of the trust fund held for her benefit;
(3), that Sprague acquired no greater rights than his assignor had, and that
the mortgage was subject, in his hands, to the execution of the trust created by
the will.

AN appeal by the defendant Sprague from a judgment entered
on the direction of Mr. Justice JAMES, before whom the action was
tried without a jury.

The action is in equity, and was brought for and in behalf of
Helen Reid, a lunatic, by her committee, to protect her beneficial
interest in a bond and mortgage given to the defendant Catharine
Barber, and by the latter assigned to the defendant Sprague.
The facts of the case are as follows: In 1851, one Jane Chamber-
lain died seized of the premises described in the complaint.

Her will, which was duly admitted to probate, contained this
clause: "I, Jane Chamberlain, of Johnstown, devise and bequeath
all my real and personal estate of which I am possessed, or which
is held in trust for me, to my daughter Catharine Barber, the
income of which is to be expended for the support of my daughter
Helen during her life, and then the principal to belong to my
daughter Catharine Barber, her heirs and assigns, and I direct my
trustee to convey my real estate according to the above devise."

In 1852, said Catharine, under the direction to convey or power of sale contained in the will, sold and conveyed the premises to one Rodney Johnson, who gave back to her a bond and mortgage thereon to secure the purchase-price ($1,500), the interest on which is the subject of controversy in this suit. The bond was conditioned for the payment " of $1,500, in two equal annual payments, from and after the day of the death of Helen Reid * * * with annual interest." The interest accruing upon the bond, from its date to March 3, 1872, was duly paid to Catharine, and applied to the support of Helen.

In April, 1872, George J. J. Barber, the husband of Catharine, borrowed $1,500 of the defendant Sprague, and gave his note to the latter therefor, payable ten years from its date with annual interest, and Catharine then assigned the bond and mortgage to Sprague, as collateral security for the payment of such note. Sprague testified that he loaned the money to Barber on the faith of the assignment. The note remained unpaid, except the sum of $736.20, paid thereon in June, 1873; and the defendant Sprague claimed to hold the bond and mortgage, both principal and interest, under the assignment, and declined to allow the interest to be used or applied to the support of Helen. The learned judge held as conclusions of law: (1), that Catharine, under the will, took an estate as trustee for the life of Helen, in the premises devised, with a power of sale and a vested remainder in fee; (2), that as such trustee she was to receive the property given and devised to her in trust, and apply it to the support of Helen during her life; (3), that under the power of sale, Catharine was authorized to sell and convey the premises absolutely, and that the grantee took the entire estate, both present and future; (4), that the bond and mortgage received by her on the sale became a fund in her hands as trustee, so to remain and continue so long as Helen should live; and that Helen was the beneficiary of the trust fund to the extent of the interest accruing thereon during her life. Judgment was directed and entered in accordance with such conclusions of law, declaring the assignment of the bond and mortgage to Sprague void, as to the interest which should accrue thereon during the life of Helen; and it was further adjudged, that as between the defendants, after the death of Helen, the bond and mortgage should be the property

of Sprague under the assignment, as security for what should remain
due on the note given him, as also for such costs and interest thereon
as he should be required to pay the plaintiff in this action; and
costs of the action were awarded against him. Catharine was
removed from the trusteeship and another was appointed in her
place, to collect the interest on the bond and mortgage, and to apply
such interest to the support of Helen during her life. The defend-
ant Sprague alone appealed from the judgment to the General
Term.

*M. M. Waters*, for the appellant.

*Martin McMartin*, for the respondent.

BOCKES, J.:

There can be no question, I think, but that the bond and mort-
gage became, or represented a trust fund in the hands of Catharine
Barber, as to which Helen Reid was the beneficiary for and to the
extent of the interest which should accrue thereon during her life.
Those instruments were given to secure the purchase-price of trust
property, sold by the trustee pursuant to the power conferred on
her under the trust; and the sum secured to be paid thereby was
made payable in terms substantially in accordance with the require-
ments of the trust, thus indicating, in addition to what equity and
the law would declare, a purpose on the part of the trustee that such
securities were dedicated to the trust. But it is sufficient that the
bond and mortgage were given on the purchase of trust property.
This alone made it a trust fund in the hands of the trustee; cer-
tainly would this be so to the extent necessary for the protection
of the interest and rights of the *cestui que trust*. Therefore the
*cestui que trust* (Helen) could have taken proceedings against
Catharine, while the latter held the bond and mortgage, to protect
the fund, if proceedings were necessary for its protection or
preservation, with a view to save the trust, and her rights as benefi-
ciary thereunder. If proceedings for that purpose could have been
maintained against Catharine, they may also be maintained against
her assignee. It is now the settled rule that an assignee of a bond
and mortgage occupies precisely the position of his assignor in

regard to the securities, with no better rights or equities. (*Bush* v. *Lathrop,* 22 N. Y., 535 ; *Sheldon* v. *Edwards,* 35 id., 283 ; *Mason* v. *Lord,* 40 id., 487; *Ingraham* v. *Disborough,* 47 id., 421, 423 ; *Union College* v. *Wheeler,* 61 id., 88.) In the last case cited, it was said (*semble*), that an assignee of a bond and mortgage, in good faith and without notice, occupied simply the position of the assignor, and took subject to the same rights and equities. It must follow therefore that Helen, the beneficiary in this bond and mortgage, is entitled to be protected in her rights therein. The defendant Sprague must be held to have taken those instruments subject to Helen's rights.

But the appellant's counsel may insist that this conclusion is based on a misapprehension of the facts. He insists that Catharine was not a trustee with power to convey the trust estate. In this, however, I think he is under mistake. On referring to the will of Jane Chamberlain, it will be seen that she devised to Catharine the entire estate, that is, all her real estate of which she was possessed, and then declared how it was to be enjoyed. The income thereof was to be expended for the support of Helen during her life. Thus, holding the entire estate, the duty devolved on Catharine to apply the rents and profits as was directed. She became trustee, therefore, *ex necessitate rei,* as much trustee as if named as such; and this was the plain intention of the testatrix, as she afterwards alludes to " my trustee," with manifest reference to Catharine, the devisee. Then she directs " my trustee " to convey the real estate, evidently intending the passing of the absolute and entire title, according to the terms of the devise, that is, so as to give Helen the income thereof during life. This construction of the will is obviously in accordance with the intention of the testatrix, and is within the fair meaning of the language employed in the instrument, and certainly, under this construction of it, the rights of the beneficiary may be fully protected.

In the view above taken of the case, the judgment directed at Special Term was right, and it must be affirmed, with costs against the appellant, but without recourse by the latter to the bond and mortgage as his indemnity therefor.

Judgment affirmed, with costs.

BOARDMAN, J.:

I think the will of Jane Chamberlain gives to Catharine Barber, her devisee and legatee, the power to sell the real estate devised. The income from the real estate till sold and the interest upon the proceeds after sale, were to be received by Catharine in trust for Helen, and applied by her to Helen's use. In pursuance of such a construction Catharine, in March, 1852, sold the real estate described in the complaint to one Johnson, and took back his bond and mortgage, secured upon this and other real estate, for $1,500, payable in two equal annual payments, after the death of Helen Reid, with annual interest. For more than twenty years the interest was annually paid to Catharine, and by her applied to the use of Helen, under the provisions of the will. In 1872 Catharine assigns the bond and mortgage to defendant Sprague, as collateral to a debt of her husband.

Now, the will may not clearly bear the construction which I have given it upon the language therein used. But we have, in case of ambiguity, a right to resort to surrounding circumstances and the conduct of the parties, to aid in its interpretation. There is no evidence that any property was held in trust for the testatrix, or that there was a trustee for any such property. The clause in the will would lead us to suppose the testatrix thought she had such property, but it is far from being evidence of the fact. The will was evidently drawn up by an inexperienced person, and the language used is uncertain in its meaning and wholly defective in its description of property. If Jane Chamberlain had no property held in trust for her by a trustee, then it follows almost inevitably, that Catharine Barber was the person designated by the words "my trustee," in the will. To Catharine was given the fee charged with the direction to sell, and she was charged with the support of Helen out of the income or interest derived therefrom. So, the deed from Catharine assumes to sell, and in form does sell to Johnson the entire title to the land. The whole value is secured by Johnson's bond and mortgage, payable after Helen's death. This is thereafter treated as the trust fund; and for over twenty years the trustee and the cestui que trust treat the $105 interest derived from this mortgage security as the fund, and only fund, applicable to the support of Helen. During the same time the real estate is

held by the purchaser free and discharged from its trust character. This conduct of the parties for so long a period, without objection, and with apparent acquiescence on all hands in the disposition of the trust property, goes very far towards aiding in the interpretation of the ambiguous language used in the will. The condition of the plaintiff, a lunatic, forbids the idea of a confirmation or ratification unless it arises from the act of her committee. But it does not appear when he was appointed or what he has done that could by possibility have that effect.

In this view of the case the findings of facts and the conclusions of law of the learned judge are correct, and the judgment should be affirmed.

I therefore concur in the conclusion of Mr. Justice BOCKES upon this appeal.

LEARNED, P. J. (dissenting):

The will of Jane Chamberlain, although inartificial, is sufficient to create a trust estate in Catharine Barber, to receive the rents and profits of the real estate, and to apply them to the use of Helen Reid, during the life of Helen; with remainder in fee to Catharine. (1 R. S. [m. p.], 728, § 55.) The trust estate is only for the life of Helen. (1 R. S., 730, § 86.) It is inalienable. (1 R. S. [m. p.], 730, §§ 82 and 84; *Cruger* v. *Jones*, 18 Barb., 467; *Tucker* v. *Tucker*, 5 N. Y., 416.)

Catharine, then, could sell the remainder, but had no power to sell the life estate held in trust for the life of Helen; unless, indeed such power was expressly given by the will.

The only part of the will which is claimed, as I understand, to confer this power, is the concluding clause, in these words: "I direct my trustee to convey my real estate according to the above devise." Now the testatrix had previously in her will devised all land "which is held in trust for me," to Catharine Barber, for the purpose above specified. It seems to me, therefore, that this concluding clause was intended to direct the trustee of the testatrix to convey the land which was held in trust for her to her devisee, according to the above devise, and that it has no application to Catharine Barber's powers as trustee.

For several reasons: 1. Catharine Barber was not the trustee of

the testatrix, but of Helen Reid. 2. The testatrix had not previously spoken of Catharine Barber as a trustee. 3. The clause is directory, not permissive, and could not be intended to give a mere power to sell, or not, at a trustee's discretion. 4. If Catharine Barber was the trustee referred to in this clause, it was meaningless to direct her to "convey according to the above devise." She was not to convey the property, but to hold it for the support of Helen, as had been previously stated. 5. The conveyance directed was of "my real estate." After the devise had taken effect and the land was held by Catharine Barber, on the trust, it would not be the real estate of the testatrix. While on the other construction, the language used would be appropriate to direct some person holding land in trust for the testatrix to make a conveyance thereof according to the terms of her will. 6. If it had been intended to give a trustee power to sell trust estate, there would be no meaning in the words "according to the above devise;" such a sale would not be according to the devise. 7. The trustee referred to is not authorized to *sell*, but directed to *convey*. And the language does not imply any compensation to be received by the trustee.

For these reasons the only meaning which I give to that clause is that the testatrix had, or thought she had, some real estate held in trust for her; that she desired such real estate to go according to her previous devise, and that she deemed it best to direct her trustee to convey it accordingly. So far as the construction of the will is to be derived from the meaning of testatrix, it is immaterial whether she had, or only thought she had, land held in trust for her.

With this view of the will, I think that Catharine Barber had no power to convey to Johnson the trust estate, free from the trust imposed. (1 R. S. [m. p.], 730, § 84.) Her conveyance may have been valid to transfer to him the remainder, after the trust life estate.

The statute absolutely protects the *cestui que trust*. She cannot be deprived of her right to the rents and profits. She is not bound to accept, and indeed has no power to accept, the bond and mortgage as a substitute for the land. To hold that she has any interest in the bond and mortgage, is practically to hold that she has lost her right to the rents and profits of the land; a right declared by

statute to be absolutely inalienable. (1 R. S., 730, § 30.) I think that the *cestui que trust* is still entitled to those rents and profits wherever the title to the land may be.

For these reasons I think that the judgment should be reversed.

Judgment affirmed with costs.