## HESS v. HESS et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

EXECUTORS AND ADMINISTRATORS (§ 138*) — REAL ESTATE — POWER OF SALE — "CLAIMS AND DEMANDS."

Testator bequeathed all his property to executors, in trust to accumulate rents and profits until the remarriage or death of the widow, and not to dispose of the same until the happening of either of such events, "except as hereinafter provided." By the second clause he directed payment of all claims and demands on or against his estate, and then a division of rents and profits among his wife and children. By the sixth clause he conferred

power on the executors to pay all incumbrances, "claims, and demands" against his estate, to raise money thereon and execute conveyances necessary in their judgment for the best interests of the estate, and to sell at either public or private sale. *Held*, that the term "claims and demands," as so used, included a liability to repair tenement buildings belonging to the estate in accordance with directions of the tenement house department, and that the executors, therefore, having no available funds to make such repairs, had power to sell the property before the repairs were made by the department, at its expense, for the benefit of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 138.*]

Patterson, P. J., and Clarke, J., dissenting.

Appeal from Special Term, New York County.

Action by Maria Hess, individually and as sole acting executrix of the last will and testament of George Hess, deceased, against George Hess and others. From part of a judgment construing the will, and finding that the executrix had not power to sell real estate, plaintiff, Maria Hess, and defendants George Kunigunda and Frederick, Kate, and Mary Hess appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward Kaufmann (James P. Niemann, on the brief), for appellants. Henry J. Goldsmith, for respondents.

LAUGHLIN, J. The action is brought for the construction of the last will and testament of George Hess, deceased, which was duly admitted to probate by the Surrogate's Court of the county of New York on the 27th day of January, 1880. The question presented by the appeal is whether the will conferred upon the executrix and the executors authority to sell the real property left by the decedent prior to the period of distribution and expiration of the trust prescribed in the will. It appears that the estate has all been administered with the exception of a parcel of land known as Nos. 5 and 7 Attorney street, borough of Manhattan, New York, upon which stand two tenement buildings. These buildings are old and dilapidated, and the net income therefrom is only $1,500 per annum. They are in need of extensive repairs, so much so that the tenement house department of the city, pursuant to the authority vested in it by law, has ordered that repairs be made upon the premises which will cost more than $3,000. The executrix and executors are unable to comply with the order of the tenement house department for lack of funds, and if they be not permitted to sell the premises it is probable either that repairs will be made and payment enforced against the property or the trustees will be obliged to suffer the premises to stand vacant. A sale, therefore, would be advantageous to all parties in interest, both cestuis que trust and remaindermen. Some of the remaindermen, however, are infants.

The testator, in the first dispositive clause of his will, after directing the payment of his debts and funeral expenses, gives, devises, and bequeaths all of his property, including the wholesale furniture business which he was conducting, to his executrix and executors, "in

---

*For other cases see same topic & §. NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trust, nevertheless, to hold, manage, and conduct the same and accumulate the rents, issues, profits, and income thereof, for the uses and purposes hereinafter mentioned, until either the remarriage or death of my said wife, but not in any wise to dispose of the same, nor of any part thereof, until the happening of either of said events, except as hereinafter provided." By clause "Second" of the will he directed the executrix and executors to pay and discharge all taxes, assessments, interest, insurance, incumbrances, claims, and demands upon or against his estate, and then to divide the net rents, issues, income, and profit "at the close of each and every year, until either the remarriage or the death of my said wife, equally among my said wife and my children, share and share alike." In clause "Third" of the will he directs the division of his estate equally among his children named in the will, share and share alike, "upon either the remarriage or death" of his wife, and he directed that in case any child should die without leaving lawful issue before the period for division the share intended for such deceased child should go to the others, and in the event of such death of a child leaving lawful issue it was provided that the share of the deceased parent should go to the surviving children. By the "Fourth" clause he bequeathed certain insurance policies to his wife, and provided that the devises and bequests to her should be in lieu of dower. In the "Fifth" clause he expressed the wish and desire that his furniture business be continued by his sons. By the "Sixth" clause he nominated and appointed his wife and his son George and his friends, Charles Derleth and Jacob Gregorius, his executrix and executors and trustees under his will and guardians of his minor children until they should arrive at the age of 21 years, and further therein provided as follows:

"I give and grant unto my said executrix and executors all necessary and proper powers to pay and discharge all incumbrances, claims and demands whatever upon or against my said estate, raise money thereon, make, execute, and deliver leases, bonds and mortgages, powers of attorney, deeds and conveyances in the law, effectual to carry out the uses, provisions, intents and purposes of this my last will and testament as fully as I myself could, and as in their best judgment they may deem in and for the best interests and benefits of my said estate, and to sell at either public or private sale."

We are of opinion that the testator by his will gave a power of sale to the executrix and executors, which it is competent for them to exercise in the circumstances disclosed by the record. It is, we think, unnecessary to decide whether the prohibition against disposition of property contained in clause "First" of the will was intended to prohibit a sale of the property, or only a distribution thereof between the parties in interest, or of the income thereof; for, assuming, without deciding, that it relates to a sale by the executrix and executors, still I think that a sale for the purpose now intended would come within the exception expressly made by the clause "except as hereinafter provided." It may be that the general provisions of clause "Sixth," conferring a power of sale upon the executrix and executors, would be deemed modified and restricted by the prohibition contained in clause "First" of the will; but by clause "Second" of the will the testator expressly directed the payment of all taxes, assessments, interest, in-

surance, incumbrances, and "claims and demands whatever upon or against" his estate. This authority is broad enough to embrace the expenditure rendered necessary by the order of the tenement house department. It therefore falls within the exception contained in clause "First" of the will, and the prohibition against disposing of the property, if applicable at all to a sale by the executrix and executors, does not prohibit them from disposing of the property for the purpose of meeting such a charge. The testator clearly intended that the executrix and executors should have authority to sell the property, should that become necessary, for the purpose of meeting taxes or other charges against the property. That authority should not receive a narrow construction. It should not be held that the authority does not exist until a legal charge exists against the property. If it appears imminent, as it does here, that a legal charge will be made against the property, that is sufficient; for it is manifestly more in the interest of the beneficiaries of the testator to have the power of sale exercised before ·work is done upon the property by the local authorities, which will become a legal charge and result in the reduction of the income, so that it necessarily will be insufficient to pay taxes and assessments and other regular charges arising thereon. I am of opinion, therefore, that the executrix and executors were authorized by the will to sell the premises in question. The appeals are stated to be from only part of the judgment, but the parts appealed from leave nothing. of substance, and a new trial should be had, to the end that a finding be made with respect to the order of the tenement house department, which. although the fact is shown by undisputed testimony, it is not. found in the decisions.

It follows that the judgment should be reversed, and a new trial ordered, but, as costs are not demanded, without costs.

INGRAHAM and SCOTT, JJ., concur.

PATTERSON, P. J. (dissenting). I am not able to concur in the reversal of this judgment. On an examination of the whole record, it seems to me that the proofs are insufficient to authorize the court to grant the relief prayed for by the plaintiff. The action, although in form one for the construction of the will of George Hess, is in reality one to authorize the carrying out of a contract of sale of premises mentioned in the complaint, which contract was made between the plaintiff, individually and as executrix and trustee of the will of George Hess, as vendor, and one Louis Roossin, as vendee. That contract of sale was entered into on the 26th day of February, 1907, and seems to have been executed nearly two years before this action was begun, according to the date of the summons. It provides for the sale by the party of the first part, for $55,000, of the property described in the complaint—$500 to be paid on the execution of the agreement, which sum seems to have been paid; $10,000 by taking the premises subject to a mortgage then a lien thereon; the sum of $35,000 to be secured by a purchase-money mortgage for that amount; and the balance of

$9,500 to be paid in cash or by certified check at the time and place of the delivery of the deed. The contract then proceeds to state:

"It being understood and agreed that this contract is subject to the approval of the court upon an application which the party hereto of the first part is to make for leave to sell the premises hereinbefore described, it being understood and agreed that, in the event of the court refusing to approve of the sale, then and in such case the sum of five hundred dollars hereon paid shall be returned by the party of the first part to the party of the second part, and this contract shall thereupon be null and void."

This contract is set out in the complaint and annexed to it in full as one of its schedules. The plaintiff alleges that, after she had entered into the contract in good faith and relying upon the validity of the will and attempting to carry out the provisions and directions therein contained, the purchaser questioned the sufficiency and validity of a power of sale contained in said last will and testament and refused to complete the contract; that the plaintiff insists that a power of sale is given by the will to her, as the sole acting trustee, to sell the premises either at public or private sale, and she alleges that a necessity exists for the exercise of that power of sale, because the premises are dilapidated, greatly out of repair, and that a requirement has been made by the building department under the tenement house law that various changes and alterations shall be made in the structures, which will cost at least $3,000; that there are no funds in her hands, or in the estate of her testator, from which those repairs and changes so required can be made; and that it would be advantageous to all parties that the property be sold and the investment thereby changed from real into personal property.

It seems to be clear that the question of the right of the trustee to sell and convey was in the minds of both vendor and vendee at the time of the execution of the contract; for as above stated, it is recited in this instrument that it is made conditional upon the approval by the court of the sale, and that the plaintiff should apply to the court for leave to sell the premises in accordance with the contract, and that if permission to do so were refused the deposit money should be returned and the contract thereupon be at an end. It is true that the action is not brought under the terms of the agreement. The plaintiff does not ask the court to approve of the particular contract of sale. Such a contract, if made under a power of sale, would not require judicial approval, and if not so made could not be approved by the court. The property is held in trust, and the Supreme Court has no power to destroy the trust, as the testator created it. It is ordinary learning that, where an express trust is created in an instrument creating an estate, every sale, conveyance, or other act of the trustee in contravention of the trust shall be absolutely void. Cruger v. Jones, 18 Barb. 467; Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745. Therefore this agreement of sale, set up in the complaint and referred to in the record, can perform no office whatever in the determination of this case; and authority to sell this real estate must be gathered, if at all, from the provisions of the will of George Hess.

I am not able to concur in the views of the majority of the court that any such power of sale to change the investment from realty in-

to personalty, or for the purpose of complying with the requirements of
the building department or the tenement house department, is given by
the will. Apart from the fact that the proof fails to show what the ex-
act requirements of the building department are in connection with
these alterations or changes, looking over the whole will to ascertain
the intention of the testator, it is plain to my mind that he intended that
his estate should remain undisposed of and undivided until after the
death or remarriage of his widow, and that was his prime intention.
By the first clause of his will the testator gives all his real and personal
property, of every kind, wheresoever situated, including his business,
to his executrix and executors (such executors having since resigned
their trust and been discharged therefrom)—

"in trust, nevertheless, to hold, manage and conduct the same, and accumulate
the rents, issues and profits and income for the uses and purposes hereinafter
mentioned, until either the remarriage or death of my said wife, but not in
any wise to dispose of the same, nor of any part thereof, until the happening
of either of said events, except as hereinafter provided."

Then he proceeds to direct the executrix and executors to pay and
discharge—

"all taxes, assessments, interest, insurance, incumbrances, claims and demands
whatever upon or against my said estate, and then divide the net rents, is-
sues, income and profit of my said estate, at the close of each and every year,
until either the remarriage or the death of my said wife, equally among my
said wife and my children, share and share alike."

Then he directs how the distribution shall be made on such remar-
riage or death of his widow, and then provides that the life estate of
his wife and certain policies of insurance upon his life in her favor
shall be taken by her in lieu of dower, to which she would otherwise
be entitled. Provision is then made for the continuation of his busi-
ness. After nominating his executrix and executors and trustees, he
proceeds to say in the sixth clause:

"I give and grant unto my said executrix and executors all necessary and
proper powers to pay and discharge all incumbrances, claims and demands
whatever upon or against my said estate, raise money thereon, make, execute
and deliver leases, bonds and mortgages, powers of attorney, deeds and con-
veyances in the law, effectual to carry out the uses, provisions, intents and
purposes of this my last will and testament as fully as I myself could, and
as in their best judgment they may deem in and for the best interests and
benefits of my said estate, and to sell at either public or private sale."

The contention now made is that under this last-quoted clause of
the will a power of sale of this real estate is given, and that it is shown
that the sale is necessary in order to carry out some of the uses and
provisions, intents, and purposes mentioned in the will, and that the
time at or the event in which it becomes necessary to sell the property
is a matter resting in the absolute discretion of the executrix and trus-
tee. I do not construe this power as being broad enough to authorize
the sale of these premises. It is given and granted to pay and dis-
charge all incumbrances, claims, and demands whatever upon or against
the testator's estate, to raise money thereon, and to make, execute, and
deliver leases, bonds and mortgages, powers of attorney, deeds, and
conveyances in the law effectual to carry out the uses, provisions, and

intents and purposes of the will; but the power to convey or grant must be in connection with something absolutely necessary to effectuate some use or provision of the will. It is not shown that a sale of these premises is necessary to carry out any use or trust or purpose mentioned in or inferable from any provision of this will. All that is alleged is that it would be advantageous to sell the realty and to change the form of the trust from one of realty to one of personalty. There is not an iota of proof which shows any necessity therefor.

The situation is clear. The premises are worth $55,000. They are incumbered to the extent of $10,000 by a first mortgage for that amount, which leaves a margin of $45,000. It cannot be possible that the amount required for making the alterations, said to be required by the tenement house department, which is alleged in the complaint to be about $3,000 or $4,000, cannot readily be raised by mortgage; and under the general power quoted from the sixth clause of the will the executrix has ample power to raise money by mortgage in relief of the estate, and one of the purposes of the will is the preservation, and not the destruction, of the trust in the form in which it exists under the interdiction of the first clause. "And a court of equity, by virtue of its general jurisdiction over trusts and trustees, can upon a proper state of facts direct how their discretion should be exercised; in other words, how the trust fund shall be administered." Ireland v. Ireland, 84 N. Y. 326. That may result in a small reduction of the annual income of the plaintiff; but that would arise from the situation into which the property has fallen.

With these views, I must dissent from the reversal of this judgment.

CLARKE, J., concurs.