In the Matter of the Application of GRACE H. WENTWORTH, Executrix, etc., of JOHN W. WENTWORTH, Deceased, Respondent, Appellant, to Compel HENRY L. ARMSTRONG, as Executor, etc., of MARY EMMA ARMSTRONG, Deceased, Appellant, Respondent, to Render and File an Account of His Proceedings as Such Executor and Trustee.

Third Department, March 3, 1920.

Will — testamentary trust to pay rents and profits of realty with remainders over — unauthorized alienation of trust property — Real Property Law, section 103, construed — cestui que trust having knowledge of unlawful alienation not estopped — trustee must account notwithstanding alienation of trust property.

A testatrix devised lands in trust to her husband to pay two-thirds of the income therefrom to the mother of the testatrix for life, the remaining third of the income to the trustee himself. At the death of the mother the trustee was directed to sell the lands and divide the proceeds into four parts, to pay two thereof to himself and one part to a sister of the testatrix. The fourth part of the proceeds was to be invested during the life of J., a brother of the testatrix, who was to receive the income as his needs might require as well as such portion of the principal as might be necessary for his support and maintenance. At the death of J. the remainder of his share was to go to the trustee who was also given power to sell in his discretion. Having paid the whole net income to the mother for some years the trustee and the mother conveyed the lands to the sister of the testatrix and from the consideration received the trustee paid off mortgages on the property. The income from the trust property was paid to the mother until her death and on the subsequent death of the son J., his widow, as executrix, sues to compel the trustee to account for the income due to J. from the date of the mother's death to the date of the death of J.

The evidence showed that the lands were sold to the sister in such a way that she should receive the share of her brother J. and use it for his benefit owing to the fact that he was insolvent, having many judgments against him and was so circumstanced that he could not receive a direct transfer, and it further appeared that the transaction took place with the full knowledge of J. and was in fact made largely at his instigation and for his benefit.

Held, that the sister who received the conveyance was competent to testify against the estate of J. as she was not a party to the proceeding nor a person interested in the event thereof for her testimony tended to impose upon her an obligation to pay to J. one-half of the moneys received by her.

However, although the son J. was fully cognizant of the transaction aforesaid and acquiesced therein, the obligations of the trustee under the trust continued and he remains accountable for the unpaid income.

By virtue of section 103 of the Real Property Law the rights of a beneficiary of an express trust to receive rents and profits of real property cannot be transferred by assignment or otherwise although the interest of a beneficiary of any other trust in real property may be transferred.

Hence, under the law of this State neither the trustee, the *cestui que trust*, remaindermen in fee, nor the courts of the State, acting separately or in conjunction, have power to destroy a trust to pay rents and profits nor can a trustee be released from a continuing duty to make payment of the same in accordance with the terms of his trust, and the law in relation to trusts for the payment of income from personal property is the same.

As the statute makes a trust of the character aforesaid absolutely inalienable the *cestui que trust* thereunder cannot be bound to an unauthorized alienation of the trust property on the principle of estoppel and the cases apparently holding to the contrary involved a consent by a beneficiary to an illegal or unwise investment of trust funds whereby there was a destruction or diminution of the trust property which differs from an alienation thereof.

KILEY, J., dissents.

APPEAL by Henry L. Armstrong, as executor, etc., of Mary Emma Armstrong, deceased, from an order of the Surrogate's Court of the county of Chemung, entered in the office of said surrogate on the 11th day of June, 1919, directing Henry L. Armstrong, as trustee of Mary Emma Armstrong, deceased, to account to the petitioner for the income of one-fourth of the value of certain real property given to the appellant in trust, and also directing him to render and file an account of his proceedings as trustee.

Appeal by the petitioner, Grace H. Wentworth, as executrix, etc., of John W. Wentworth, deceased, from an order of the Surrogate's Court of the county of Chemung, entered in the office of said surrogate on the 11th day of June, 1919, denying the petitioner's motion for permission to reopen the case and introduce further evidence, and also from an order and decision of the said Surrogate's Court, entered in the office of said surrogate on the same day, in so far as said decree and order hold that the income upon the trust fund, to which the petitioner is entitled, should be figured only at four per cent, and that the petitioner is not entitled to interest on the said income with annual rests and to an allowance from the principal of said trust fund.

*Powell Crichton* [*B. L. Newman* of counsel], for the appellant.

*Lynch & Clifford* [*Martin S. Lynch* of counsel], for the respondent.

H. T. KELLOGG, J.:

Mary E. Armstrong was the owner of a parcel of land in New York city, subject to the dower interest of her mother, Mary E. Wentworth. She died in the year 1901, and devised the parcel in trust to her husband, Henry L. Armstrong. He was required during the life of the mother to pay to her two-thirds of the income therefrom, and the remaining third to himself. At the death of the mother he was directed to sell the parcel, and, dividing the proceeds into four parts, to pay over to himself two parts thereof and one part to Lizzie C. Wright, a sister of the testatrix. He was to keep the fourth share invested during the life of John W. Wentworth, a brother of the testatrix, and to pay over the income thereof to him from time to time as he might think his needs required, as well as such portion of the principal as he might " think best from time to time to give him for his support and maintenance and personal needs and uses." At the death of John W. Wentworth the remainder in this share was to pass to the trustee. Out of the share of the principal passing to him the trustee was to pay off a mortgage of $10,000 which rested upon the property. There was another mortgage thereon for $5,000, but this was charged against no particular share. The trustee was further empowered to sell the property whenever in his judgment the interest of the estate would be promoted thereby. He entered into possession, and paid all the net income from the property to the mother, Mary E. Wentworth, until January 5, 1909. On this date the trustee and the mother conveyed the parcel to Lizzie C. Wright for an apparent consideration of $60,000. Of this sum $40,000 was raised by Lizzie on a mortgage upon the premises, and $30,000 was paid to the trustee. From this amount he paid off the two mortgages together with the taxes upon the property, so that the net amount received by him was $13,686.43. Lizzie C. Wright also paid certain charges, so that the net amount received by her was $9,050.04. The mother, Mary E. Wentworth, continued to live until February 28, 1914, and no complaint seems to have been made that she was not paid her income from the date of the sale to the date of her death. Lizzie C. Wright had possession of the property and rented it until the summer of 1914, when, default being made on the $40,000 mortgage, foreclosure was begun, and the

property was subsequently sold for a sum insufficient to pay the debt against it. Thereafter, on September 17, 1917, John W. Wentworth died, and the widow, as executrix of his will, then brought these proceedings to compel the trustee, Henry L. Armstrong, to account for the income upon one-quarter of the proceeds of the trust property from the date of the death of Mary E. Wentworth to the date of the death of John W. Wentworth.

According to the testimony given before the surrogate by the trustee and Lizzie C. Wright the parcel devised was sold by the former to the latter for the purpose of making a division of the proceeds in such a way that the trustee would have one-half of the principal, less the two mortgages and taxes. Lizzie C. Wright would get one-quarter, and John W. Wentworth, through the agency of his sister, would eventually obtain the other quarter. Lizzie was to receive possession of the share of her brother John and use it for his benefit, since, being heavily in debt and having many judgments filed against him, he was not so circumstanced that he could receive a direct transfer. These witnesses testified that the arrangement was agreed to with the full knowledge of John, and was in fact made largely at his instigation and for his benefit. Their testimony is borne out by the probabilities, by the surrounding facts, and by the actions and letters of John which are in evidence. It is said that Lizzie C. Wright was incompetent to testify against the estate of her deceased brother, but this does not appear to be so, for she was not a party to the proceedings nor a person interested in the event thereof. (Code Civ. Proc. § 829.) Moreover, she did not testify in her own behalf, but in very evident antagonism thereto. Thus, if the transaction to which she testified were valid to relieve the trustee, it was equally valid to create an obligation on her part to pay to John one-half the moneys received by her therefrom, an amount far exceeding the sum which she might be called upon to pay in the event that the trustee were held liable in these proceedings. We think, therefore, that the trustee was entitled to findings that John W. Wentworth was wholly cognizant of the entire transaction, and fully acquiesced therein. We also think that notwithstanding his acquiescence the trust duty of Henry L. Armstrong continued, and that he was accountable for unpaid income as the surrogate has found him accountable.

It is provided in section 103 of the Real Property Law (Consol. Laws, chap. 50; Laws of 1909, chap. 52): "The right of a beneficiary of an express trust to receive rents and profits of real property and apply them to the use of any person, can not be transferred by assignment or otherwise, but the right and interest of the beneficiary of any other trust in real property may be transferred." (See, also, Real Prop. Law [Gen. Laws, chap. 46; Laws of 1896, chap. 547], § 83, as amd. by Laws of 1903, chap. 88.) This enactment was in derogation of the common law by virtue of which an adult *cestui que trust* could always alienate his trust interest, even in defiance of the terms of the instrument creating the trust. (*Havens* v. *Healy*, 15 Barb. 296; *Bryan* v. *Knickerbacker*, 1 Barb. Ch. 409.) The statute has been construed in a multitude of cases which have condemned alienation in all its forms and pronounced trusts of rents and profits wholly "indestructible and absolutely inalienable." (*Douglas* v. *Cruger*, 80 N. Y. 15.) It has been held that by force thereof the income required for the maintenance of the *cestui que trust* is now unavailable to creditors (*Bramhall* v. *Ferris*, 14 N. Y. 41; *Tolles* v. *Wood*, 99 id. 616; *Rome Exchange Bank* v. *Eames*, 4 Abb. Ct. App. Dec. 83); that the trust continues even when the *cestui que trust* becomes entitled to the estate in remainder, and that he may not acquire possession of the subject of the trust (*Asch* v. *Asch*, 47 Hun, 285; *Douglas* v. *Cruger*, 80 N. Y. 15; *Oviatt* v. *Hopkins*, 20 App. Div. 168); that the beneficiary may not authorize the trustees to sell the trust property or pledge his future interest therein to the trustees in satisfaction of a debt to them (*Van Epps* v. *Van Epps*, 9 Paige, 237); that the trustee cannot, at the request of the *cestui que trust* with the consent of those entitled to the fee in remainder, mortgage the subject of the trust, nor can the courts authorize such a transfer (*Cruger* v. *Jones*, 18 Barb. 467); that the beneficiary cannot release his interest to the trustee (*Oviatt* v. *Hopkins*, 20 App. Div. 168); that the express consent of the *cestui que trust* is not sufficient to empower a trustee of rents and profits to make a sale of the trust property for the purpose of division, even though under the terms of the trust a power of sale is given to the trustee. (*Champlin* v. *Haight*, 7 Hill, 245.) Thus it will be seen from these cases, as

well as from numerous others, that neither the trustee, the *cestui que trust*, the remaindermen in fee, nor the courts of the State, acting separately or in conjunction, by means of releases, assignments, deeds, mortgages, decrees, or any other form of writing or words, can destroy a trust interest to pay rents and profits, nor can a trustee be released from a continuing duty to make payment of the same in accordance with the terms of his trust. The law in relation to trusts for the payment of income from personal property is the same. (*Lent* v. *Howard*, 89 N. Y. 169; Pers. Prop. Law [Gen. Laws, chap. 47; Laws of 1897, chap. 417], § 3, as amd. by Laws of 1903, chap. 87; Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 15, as amd. by Laws of 1911, chap. 327.)

Conceding the law to be as thus stated, the trustee nevertheless argues that, although an alienation by express writing is in itself absolutely void, it indirectly becomes effective by the application of the doctrine of estoppel, through which a *cestui que trust* is prevented from disputing its validity. In substantiation of this contention he quotes a statement made in *Butterfield* v. *Cowing* (112 N. Y. 492) as follows: " It is quite clear that no *cestui que trust* can allege that to be a breach of trust which has been done under his own sanction, whether by previous consent or subsequent ratification. The general rule is that, either concurrence in the act, or acquiescence without original concurrence, will release the trustees." A similar statement had previously been made in *Sherman* v. *Parish* (53 N. Y. 483) and was afterwards made in *Woodbridge* v. *Bockes* (59 App. Div. 503; affd., 170 N. Y. 596). It will be seen by an examination of the opinion of Mr. Justice LAUGHLIN in the last-named case that the all-inclusive form of words used in these cases to express the doctrine of estoppel relied upon is borrowed from the English authorities, opinions in many of which are there quoted at some length. Under the common law of England the interest of a beneficiary in any form of trust, including a trust for the payment of rents, profits and income, was alienable. Gray, citing many authorities, states the English law to be as follows: " If the income of trust property is to be paid to A. during his life, the direction that it shall be paid into his own hands or that he shall not alienate or anticipate it, or that it shall not be liable for his debts is void."

(Restraints on the Alienation of Property [2d ed.], 159.) Since in that jurisdiction the power of trust alienation is universally possessed it is entirely consistent that a *cestui que trust* should always be estopped by his acquiescence in a transfer. The English cases, therefore, afford no justification for a holding in this jurisdiction that an estoppel will bind the beneficiary of a trust of rents and profits, since our statute makes a trust of that character absolutely inalienable, and it cannot be that a rule created by the courts will make that valid which by statute is absolutely void. Indeed, there is a qualification of the English doctrine itself which is given in our own case of *Sherman* v. *Parish* (*supra*) as follows: " This generality is stated to be so limited as that the *cestuis que trust* must be *sui juris* and capable of acting for themselves; so that married women, minors and others thus under disability cannot be bound by alleged acquiescence, or even by urgent requests." It is apparent that if under the law of England spendthrift trusts obtained as they do here, the doctrine of estoppel would be further limited to exclude all persons to whom rents and profits are given in trust, since all such persons are under disability as great as that of minors or other incompetents. Many New York cases are also cited in *Woodbridge* v. *Bockes* (59 App. Div. 503) in support of the doctrine, but an examination of these cases will disclose that in almost every instance the question involved related to a consent by a beneficiary to an illegal or unwise investment of the trust fund. In such case there is no forbidden alienation by the *cestui que trust*. The fund merely suffers destruction or diminution, and is in no sense the subject of alienation. *Sherman* v. *Parish* (*supra*) is itself such a case. *Butterfield* v. *Cowing*, from which the particular quotation is made, involves the execution of a trust for bondholders, not a trust of rents, profits and income for life, as to which alone the prohibition against alienation applies. *Woodbridge* v. *Bockes* was a case where the beneficiary had for twenty-five years been in possession of the entire principal fund of the trust, had annually taken therefrom a greater sum for maintenance than permitted, and then, with the fund in her possession, having herself become trustee, brought an action for an accounting against the original trustee whom she had previously released from liability. The court held that the

equities of the case were such that no relief should be granted, stating that the liability of the original trustee to remaindermen was not a question involved. It seems clear that as to all income previously payable to the beneficiary that obligation had been satisfied by the beneficiary herself. If in so doing she had used the principal that was a grievance of the unrepresented remaindermen, not of the beneficiary. As to all future trust duties she was not in a position to re-establish the original trust as created, since, at the moment, she was herself the trustee in possession of all trust funds, and had neither resigned nor surrendered the funds. The question involved was not as to the validity of an alienation, but solely as to a remedy to be afforded or withheld. That case does not support the doctrine of estoppel in the comprehensive form in which it has so often been stated, nor have I been able to find a case which militates against the view that the doctrine is subject to the limitation that it does not apply to a trust of rents and profits to make effective an alienation of that which is legally incapable of alienation. That the doctrine is not applicable to such a case has been held in the two cases of *Douglas* v. *Cruger (supra)* and *Matter of Brennan* (21 App. Div. 236).

In *Douglas* v. *Cruger* a husband conveyed to a trustee all his interest in lands, the fee in which was owned by his wife, in trust to receive the rents and profits and apply them to her use during their joint lives. The trustee thereafter, pursuant to an order of the Supreme Court, conveyed the trust interest to the wife. Husband and wife thereupon executed a mortgage upon the lands, and an action was brought to foreclose the mortgage in which the plaintiff obtained a decree. The Court of Appeals modified the decree to exclude the trust interest of the wife. EARL, J., said: " The further claim is made that Mrs. Cruger is estopped by her mortgage from claiming any interest under the trust. * * * Besides, she could not be estopped from asserting that her mortgage, so far as it could affect her trust interest, was in contravention of the statute. If she could be, the statute could be easily evaded, and its restrictions would be weak indeed." In *Matter of Brennan* there was a trust to pay rents and profits of real estate to a husband for life, remainder to his children. The husband and three children who were then of age joined in a request

to the trustee to convey the land to the wife, and signed releases discharging him from all liability for so doing. The conveyance was made and husband and wife signed the mortgage in suit. BRADLEY, J., said: " Having no estate in the property, he could not assign or dispose of his interest in the income, rents and profits which he as the beneficiary of the trust was entitled to receive. (1 R. S. 730, § 63; *Noyes* v. *Blakeman*, 6 N. Y. 567.) How then could he bar or estop himself from asserting his right to require the execution of the trust in his behalf by any voluntary act on his part? * * * We now see no satisfactory answer to the proposition that the beneficiary may, notwithstanding anything appearing in the papers presented on this review, insist upon the execution of the trust created in his behalf by the will."

We think that under all the authorities the trustee was not relieved of his trust duty, after the death of Mary E. Wentworth, to pay income to John W. Wentworth during life, upon one-quarter of the net proceeds of the parcel devised in trust; that the surrogate was correct in determining that the amount of such proceeds was the sum named in the deed to Lizzie C. Wright, less certain charges determined by him; that the surrogate has correctly measured the accountability of the trustee for a violation of his trust duty, and that the order should be affirmed.

The order should be affirmed, with costs.

All concur, JOHN M. KELLOGG, P. J., in the result, on the findings and opinion of the surrogate, except KILEY, J., dissenting.

Decree and order affirmed, with costs. The court disapproves of findings 18, 19 and 20; and finds that John W. Wentworth consented to the sale, the execution of the mortgage, and the disposition of the moneys raised thereby, and acquiesced in an arrangement by which one-quarter of the parcel conveyed or its proceeds should be held by the grantee for his benefit or used for or paid over to him in lieu of its retention by the grantor under the terms of the trust created for his benefit by the will.