Matter of the Estate of JOHN ORIN PHILLIPS, Deceased.

(Surrogate's Court, New York County, August, 1919.)

Wills — construction of — invalid trusts — intestacy — Personal Property Law, § 11.

> Where a trust created by the residuary clause of a will for a term of twenty years is palpably invalid under section 11 of the Personal Property Law, and any attempt to carry out

the intention of the testator would necessitate the writing of a new will by the court, which is not permitted, it will be held that the testator as to the residuary estate died intestate.

Where the testator directed that out of the trust estate mentioned in the residuary clause, his diamond ring be given and turned over to his son as his absolute property when he became thirty years of age, and in the event of his death prior to that time that the ring should be given by the executors to another named person, such gift is in effect a separate trust, not dependent on the other trust provisions, and will be given effect, as it does not offend the statute.

Where it is evident that directions to the executors to retain the property held in trust in their discretion for a period of ten years, and that further directions respecting the sale thereof and the investment of the proceeds were given by the testator solely in connection with the administration of the trust sought to be created under the residuary clause, and for that purpose only, such directions are nugatory and must be disregarded.

APPLICATION under section 2615 of the Code of Civil Procedure for the construction of a will.

White & Case (David Paine, of counsel), for Bankers Trust Company, executor and trustee.

Alexander & Green (Charles W. Pierson and L. A. Doherty, of counsel), for widow.

Daniel J. Mooney, special guardian, for infant children of testator.

Gross, Hyde & Shipman, for Curtiss R. Blanchard and John Porter, executors and trustees.

Leslie J. Tompkins, special guardian for infant nieces and nephews.

Appleton, Perrin & Hoyt, for May M. Phillips Berkley, legatee.

Misc.] Surrogate's Court, New York County, August, 1919.

COHALAN, S. This is an application under section 2615 of the Code of Civil Procedure, by the Bankers Trust Company, one of the executors and trustees under the will of the testator, for a construction of the will of John Orin Phillips. The particular portions of the will concerning which the determination of this court is requested follow:

"Article V. I hereby give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, wheresoever situated, including the proceeds of any and all policies of life insurance whereof I may be seized or possessed, or to which I may be in any manner entitled, or in which I may be interested at the time of my death, unto my executors and trustees, hereinafter named, and their successors, successor or the survivor or survivors of them. In trust nevertheless as follows:

"Article VI. I further will and direct that out of the said trust estate mentioned in the foregoing article numbered V of this, my last will and testament, that my diamond ring of about three and one-half carats be given and turned over to my son, Harry Moore Phillips, as his absolute property, when he reaches the age of thirty (30) years.

" In the event of the death of my said son, Harry Moore Phillips, before he reaches the age of thirty (30) years, I will and direct that said diamond ring be given and turned over to Stanley L. Moore, as his absolute property, provided at the time of my death said Stanley L. Moore is in my employ or the employ of Capitol Lunch Company, a Maine corporation.

"Article VII. I further will and direct that my trustees hereinafter named, their successors, successor, survivors or survivor of them, may, if in their or its discretion it shall seem most advantageous and for the best interests of my estate, hold, retain and conserve

Surrogate's Court, New York County, August, 1919.    [Vol. 108.

all the shares of capital stock of which I may be seized or possessed at the time of my death in Capitol Lunch Company, a corporation organized under and existing by virtue of the laws of the State of Maine, and also Capitol Lunch Company, Inc., a corporation organized under and existing by virtue of the laws of the State of Maine, and all other property, both real and personal, of which I may be seized at the time of my death, for a period of ten (10) years from my death.

" I further will and direct that John Porter, of Hartford, Connecticut, and Curtiss R. Blanchard, of Worcester, Massachusetts, hereinafter named, their survivors or survivor of them, have the preference to purchase the aforesaid shares of stock at their fair and reasonable market value, but for a sum not less than the highest price that can be procured for said shares of stock in the open market.

" I further will and direct that the shares of stock in this article referred to be sold by my trustees, their successors, survivors or survivor of them, at the expiration of ten (10) years after my death.

" Whenever said shares of stock are sold I will and direct that my trustees, hereinafter named, or their successors, survivors or survivor of them, pay and turn over to my brother, Dennie H. Phillips, of Portland, Oregon, the sum of Three thousand ($3,000) dollars out of the proceeds of said sale of stock as aforesaid. If he should die before me or before the sale of stock as aforesaid, I direct that said sum of Three thousand ($3,000) dollars be paid to his child or children in equal parts, share and share alike, if he has any living.

" Upon the sale of said shares of stock, I further will and direct that my trustees herein named or the successors, survivors or survivor of them, pay and turn over to my brother, Pitt P. Phillips, of Athol, Massa-

chusetts, the sum of Three thousand ($3,000) dollars, out of the proceeds of said sale; if he should die before me or before the sale of stock as aforesaid, I direct the said sum of Three thousand ($3,000) dollars be paid to his child or children in equal parts, share and share alike.

" I further will and direct that after the payment of said legacies of three thousand ($3,000) dollars to each of my aforesaid brothers or their children, that the balance of the proceeds of the sale of said shares of stock shall be invested in first mortgages on improved real property, located in the Borough of Manhattan, City and County of New York, bonds or obligations of the United States or any of the states of the United States, or bonds of any municipal corporation of fifty thousand (50,000) inhabitants or over, regularly paying its interest.

" I further will and direct that upon the sale of any property, either real or personal, of which I may be seized or possessed at the time of my death, the proceeds be invested only in the securities mentioned and set forth in this Article VII of my last will and testament.

"Article VIII. I further will and direct that my trustees hereinafter named, or their successors, survivors or survivor of them, from the income derived from the property in their hands, pay to my wife, Clara Moore Phillips, the sum of two hundred ($200) dollars per month, payable on or about the first day of each month, said payments to begin at my death and to continue during the period of the trust by this instrument created.

" I further will and direct that my trustees hereinafter named, or the successors or survivors or survivor of them, from the income derived from the property in their hands, pay to my sister, May M. Phillips,

Surrogate's Court, New York County, August, 1919. [Vol. 108.

the sum of one hundred ($100) dollars per month, payable on or about the first day of each month, said payments to begin at my death and to continue during the period of the trust by this instrument created. At the termination of said trust, I give, devise and bequeath to my said sister, May M. Phillips, the sum of two thousand five hundred ($2,500) dollars.

" I further will and direct that my trustees, hereinafter mentioned, or the successors or survivors or survivor of them, from the income derived from the property in their hands, pay to Maria C. Beebe, sister of my wife, the sum of one hundred ($100) dollars per month, payable on or about the first day of each month, said payments to begin at my death and to continue during the period of the trust by this instrument created.

" I further will and direct that from the income from my property, my trustees, hereinafter named, their successors, survivors or survivor of them, shall pay to my three children, Harry Moore Phillips, Ruth Eleanor Phillips and Mary Elizabeth Phillips, at such times and such sums as to my trustees may seem necessary and expedient for their proper support, maintenance and education until each child reaches the age of thirty (30) years; as soon as any child reaches the age of thirty (30) years, I will and direct that my trustees, hereinafter named, pay to such child, out of the income, the sum of three thousand ($3,000) dollars per year, payable monthly; said payments of three thousand ($3,000) dollars each to continue until the termination of the trust by this instrument created.

" In the event of the death of any of my children, leaving children them surviving, I direct that such surviving child or children receive during the duration of this trust, the share its parent is entitled to receive, until the termination of the trust hereby created.

" I further will and direct that at the expiration of twenty (20) years after my decease the trust created by this, my last will and testament, be terminated; that my trustees hereinafter named or their successors, survivors or survivor of them, pay and turn over to my wife, Clara Moore Phillips, the sum of twenty-five thousand ($25,000) dollars for her sole and absolute property in lieu of dower and all rights of dower, and I further will and direct that all the rest, residue and remainder of my property and estate, real, personal or mixed, be given and turned over at the expiration of the trust as provided in this article, to my three children, Harry Moore Phillips, Ruth Eleanor Phillips and Mary Elizabeth Phillips, one-third (1-3) to each, share and share alike, to them and their heirs and assigns, absolutely and forever. In the event of the death of either of my said children before the expiration of the above mentioned period of twenty years, then the issue of such deceased child or children is to have the share or portion that the parent or parents would have been entitled to if living; if, however, any of my children should die before the expiration of the above-mentioned period of twenty years, leaving no lawful issue, then his or her or their share to be turned over to my surviving child or children in equal parts at the expiration of said period of twenty years."

The testator was the president and principal stockholder of the Capitol Lunch, Inc., and certain allied companies, which own and operate a chain of lunchrooms in various cities of the Atlantic states. His estate consists of personal property only, and the stock of the lunch companies forms the principal part of his fortune. He left him surviving his widow and three infant children.

Examining the will of testator it will be perceived that by article V of the will he gives all the residue

Surrogate's Court, New York County, August, 1919. [Vol. 108.

of his estate to his executors and trustees in trust, the term of which is fixed by article IX at twenty years. This trust is palpably invalid. Pers. Prop. Law, § 11. This fact seems to be agreed to by all the parties. The special guardians and the other legatees affected by the clauses in question, however, differ in what they respectively claim should be the proper interpretation of testator's will and the method of giving effect to their several contentions. The testator did not contemplate a segregation of the fund held in trust, with the one exception hereinafter noticed, and the trust he sought to establish so clearly violates the statute against perpetuities that his intention in this regard must, at least, be disregarded. *Benedict* v. *Webb,* 98 N. Y. 460, 466; *Central Trust Co.* v. *Egleston,* 185 id. 23.

By article VI the testator directs his executors " out of the said trust estate " to give and turn over to his son a certain diamond ring upon his reaching the age of thirty years, and in the event of his death prior to that time to give the same to Stanley L. Moore upon certain conditions. Courts lean as far as possible in support of all such valid parts of a will as can be separated from the invalid without defeating the intent of the testator. *Oxley* v. *Lane,* 35 N. Y. 349. In my opinion this trust can be separated from the other provisions regarding the trust estate sought to be created. It is in effect a separate trust, and is not dependent on the other trust provisions. It is not measured by the same period of time as the trust of the remainder of the residue, and as it does not offend the statute, effect should be given to this provision of the testator's will.

So far as the interests of his wards are concerned the special guardian for the infant nieces and nephews of the testator contends that articles V, VI and VII,

and particularly the legacies given in subdivisions 4 and 5 of article VII are valid, irrespective of any question that may arise with respect to any other portion of article VII or articles VI to IX, inclusive. Without discussing at length the argument made by the special guardian, I feel that I am bound in the disposition of this question by the decision of the Court of Appeals in *Crawford* v. *McCarthy,* 159 N. Y. 514.

The general trust scheme contemplated the holding of the entire residuary estate by the trustees in trust for the period of twenty years. The trustees are directed in article VII to pay out of the proceeds of the sale, at some future time, of a portion of the fund held in trust, certain specified sums to designated individuals. These legacies are not demonstrative legacies. *Crawford* v. *McCarthy, supra.* The testator by his will expressly bequeathed the property, from the proceeds of which the payments are directed to be made, to his executors and trustees. But there is no general bequest of these sums to the legatees. Two elements are necessary to constitute a demonstrative legacy. There must be, first, a bequest in the nature of a general legacy, and second, it must point to a fund out of which the payment is to be made, partaking of the character of a specific legacy. As already pointed out, but one of these elements is present in this case, and that is the one directing the payment to be made out of a particular fund. In the instant case, therefore, the fund out of which the legacies were given under article VII having failed, the direction to the trustees to pay therefrom the sum of $3,000 to each of the testator's brothers or their children cannot be given effect and must fail. *Matter of Tinney,* 49 Misc. Rep. 213.

In considering the provisions of articles VIII and IX it must be borne in mind that the validity of these provisions depends upon the limitation of the trust estate,

and not upon the manner in which the income is disposed of. "A testator may suspend the absolute power of alienation for a period of two selected lives in being at the creation of the estate, and during that time he may make such disposition of the annual income among as many persons as he sees fit. Thus having created a trust term which must end within the period required by the statute, he may provide that the income shall be paid during that time to A. for life, * * * and so on, for as many different lives as he chooses, provided the whole trust term must end with the death of the survivor of the two lives." *Schermerhorn* v. *Cotting,* 131 N. Y. 48, 58. The testator, however, bequeathed his entire residuary estate to his executors and trustees in trust, and expressly fixed the period of the trust at twenty years, so that the trust is invalid, it being clear that the will created but a single trust term unlawful in its duration.

Some of the parties herein, and notably the special guardian for the infant children of the testator, while acknowledging the invalidity of the trust sought to be created, urge a construction which will eliminate the trust provisions, but which will declare valid and give effect presently to the various sums bequeathed *at the end* of the proposed trust term. In support of this contention the cases of *Stewart* v. *Woolley,* 121 App. Div. 531; *Matter of Hitchcock,* 222 N. Y. 57; *Bailey* v. *Buffalo Loan, T. & S. D. Co.,* 213 id. 525, and *Kalish* v. *Kalish,* 166 id. 368, are cited as authority. These cases are not, in my opinion, controlling on this point. In *Stewart* v. *Woolley* the court disregarded an invalid provision postponing distribution five years, and ordered an immediate distribution, without, however, disturbing the distribution intended by the testator. In other words, the testator's dominant purpose was accelerated, but his will in other respects was given

effect. *Matter of Hitchcock* is similar. In *Kalish* v.
*Kalish* the will gave the testator's widow a valid life
estate. The court, however, expunged a subsequent
clause providing for a void trust without destroying
the will as a whole or creating partial intestacy,
because it was succeeded by a valid ultimate trust and
good remainders in favor of the same legatees for
whose benefit the void intermediate trust was created
and under which they took the same proportions. But
the general plan of the testator was preserved. In
*Bailey* v. *Buffalo Loan, T. & S. D. Co.* the court held
that the testator surrounded the disposition of the trust
by provisions in violation of the statutes relating to
perpetuities and ownership and alienation of personal
property, and as the predominating purpose for which
the trust was attempted to be created was dependent
on the validity of the whole trust, which could not be
carried out, the entire trust failed. This case seems
to be controlling in the proper disposition of this
question.

In my opinion the trust sought to be created by
the testator by article V *et seq.*, and particularly
by the provisions of articles VIII and IX, consti-
tute so important a part of the testator's scheme
of disposition that their invalidity necessarily con-
demns the whole trust scheme, and consequently the
legacies payable at the termination thereof must fail.
They are not so distinct and separable from the other
and concededly invalid provisions of the will that they
can be upheld. The rule to be followed in such a case
is thus declared in *Kalish* v. *Kalish, supra:* " This
necessity (of deciding whether as to certain wills the
void provisions may be excised) has led to the rule
which is now firmly established in this state, that when
the several parts of a will are so intermingled or inter-
dependent that the bad cannot be separated from the

Surrogate's Court, New York County, August, 1919. [Vol. 108.

good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be." See, also, *Davis* v. *MacMahon,* 161 App. Div. 458, 464, and cases cited. The trust being one and inseparable, the failure of an integral part thereof necessarily invalidates the whole. *Leach* v. *Godwin,* 198 N. Y. 35; *Vanderpoel* v. *Loew,* 112 id. 167.

It is impossible to reconcile the rights of the parties who were under the will to receive legacies at the termination of the trust by an adjudication which would sustain these legacies while declaring the trust invalid, for to do so would do violence to the manifest intention of the testator, which is controlling, and the whole trust scheme of the will. *Central Trust Co.* v. *Egleston, supra; Robinson* v. *Martin,* 200 N. Y. 159; *Salter* v. *Drowne,* 205 id. 204; *Fulton Trust Co.* v. *Phillips,* 218 id. 573; *Cammann* v. *Bailey,* 210 id. 19; *Herzog* v. *Title G. & T. Co.,* 177 id. 86. To attempt to carry out the trust scheme of the testator would necessitate writing a new will by this court, which is not permitted. In my opinion, the testator died intestate as to his entire residuary estate, with the exception of the diamond ring already referred to.

But one point remains for further consideration. Briefly, it is this: What effect is to be given to the provisions of article VII, wherein the executors and trustees are directed to retain the property held in trust in their discretion for the period of ten years, and the further directions respecting the sale thereof and the investment of the proceeds? To my mind it seems evident that these directions were given by the testator solely in connection with the administration

of the trust he sought to create by his will, and for that purpose only. Consequently, the trust having failed, the directions just noted are nugatory and must be disregarded.

Decreed accordingly.