In the Matter of the Estate of NELLIE B. DRAKE, Deceased.

Surrogate's Court, New York County, December, 1923.

**Wills — construction — trusts — when an ulterior, unlawful limitation will not invalidate the legal dispositions of a will — when a trust will not be declared void in anticipation of an event which may never happen.**

The will of testatrix directed the equal division of certain shares of corporate stock or the proceeds thereof, if sold, into two trusts. The income of the first trust was made payable to her son for his life, with direction that at his death the principal be paid to his children and if none survived him the income was to be paid to the son's wife until her remarriage or death. In the event of the son's leaving no children him surviving, there was a gift over of the remainder to another son of the testatrix, or to his issue. Certain other contingencies were provided for and in default of all other named remaindermen the remainder vested in a niece of the testatrix, or her heirs. The income of the second trust was directed to be paid to the remaining son of testatrix, with provisions similar to those of the first trust, for the benefit of his issue and his wife with the same scheme for the disposition of the remainder. By a codicil the provisions of the first trust were changed in the one particular that the wife of the life beneficiary was excluded from any participation and the benefits originally given to her were directed to inure to the benefit of any subsequent wife of said son. Though said son now has no issue there is in being an infant child of the life beneficiary under the second trust who has a remainder interest in both trusts. *Held*, that the first trust may not be set aside because of the remote possibility that the life beneficiary will marry a person not in being at the death of the testatrix, as the law will not permit an ulterior, unlawful limitation to invalidate the legal dispositions of the will, nor will the trust be presently declared invalid in anticipation of the actual happening of the event, especially as the alleged invalid contingency may never happen.

49

Surrogate's Court, New York County, December, 1923.    [Vol. 121

A contention that an ademption of the legacy resulted because the testatrix in her lifetime entered into an agreement for the sale of the stock bequeathed by her in trust, was without merit as a ground for breaking down the trusts.

PROCEEDING on an accounting and for construction of a will.

*Battle, Vandiver, Levy & Van Tine* (*Isaac H. Levy* and *Lanman Crosby*, of counsel), for executors.

*Gregory, Stewart & Wrenn*, for Julian A. Gregory, trustee.

*Abberley & Bryde*, for William Richters.

*Edwin S. Merrill*, for objectant.

*Jerome F. Donovan*, special guardian.

FOLEY, S. In this accounting proceeding a construction of the will is asked and approval is requested of the sale of stock belonging to the estate. After making certain pecuniary bequests, the will directs a number of shares of stock in a restaurant corporation in New York city, or the proceeds thereof, if sold, to be divided equally into two trusts.

The testatrix's direction in relation to the first trust is that the income thereof was payable to her son, Ralph B. Drake, for his life. Upon his death the principal was directed to be paid to his children. If none were living at his death, the income was payable to the wife, Lydia, until her remarriage or death. In case Ralph should leave no children, there was a gift over of the remainder to the other son, Leon A. Drake, or to his issue. Certain other contingencies are provided for and in default of all the other remaindermen named, the remainder vested in decedent's niece, Hazel Burnham, or her heirs.

With regard to the second trust, the will directs the payment of the income to the remaining son, Leon A. Drake, with provisions similar to those of the first trust for the benefit of his issue and his wife, with the same scheme for the disposition of the remainder.

In a codicil executed by the testatrix the provisions of the trust for the life of Ralph B. Drake were changed in one particular. The subsequent life estate for Lydia H. Drake was revoked. She was excluded from any participation, and the benefits given to her originally were directed to inure to the benefit of any subsequent wife that Ralph shall have married. The son Ralph now has no issue, but there is in existence an infant child of the son Leon, who has a remainder interest in both trusts.

The primary intention of the testatrix, ascertained by a careful reading of her will and codicil, was to give the income of each trust to each son for life, in order to guard against their possible improvidence. Her secondary purpose was to give the remainder to the

MATTER OF NELLIE B. DRAKE.       771

Misc. 769]     Surrogate's Court, New York County, December, 1923.

surviving son or to her grandchildren. Counsel for the sons, who are the beneficiaries of these trusts, ingeniously attempts to nullify the obvious intention of the mother and to destroy these trusts, *first,* on the theory that they are invalid in law; *second,* on the theory of ademption of the legacy of stock, which forms the *corpus* of the trusts, and *third,* by greatly depleting the *corpus* of the trust funds. The alleged invalidity of one of the trusts is based upon the contention that there is a possibility of the son Ralph marrying a person not in being at the death of the testatrix, thereby creating a void life estate intermediate between the first life tenant and the ultimate remainderman. It has always been the policy and duty of Surrogates' Courts and courts of equity to safeguard the maintenance of a trust and to frustrate all efforts on the part of trustees, beneficiaries and remaindermen to destroy valid trusts created by a will. *Matter of Wentworth,* 230 N. Y. 176, affg. 190 App. Div. 829; *Metcalfe* v. *Union Trust Co.,* 181 N. Y. 39, 48. The prospect of a lean though permanent income under a will is disappointing to most relatives. It encourages frequent applications to this court to destroy the trust by invoking fictions of law or abstruse rules of construction, which have no application to the language of the will involved. The desire to obtain the property freed from the trust and to enjoy its immediate use entirely disregards the rights of the remaindermen. In most cases the latter are infants who should be the special objects of this court's protection. So here, the provisions of the codicil in no way modified or affected the separate divisible valid trust created for the benefit of the son Leon.

The trust for the life of Ralph may not be set aside, because of the remote possibility that he will marry a person not in being at the death of his mother. But for this possible defect, the trust is legal. The authorities do not permit an ulterior, unlawful limitation to invalidate the legal dispositions of the will. The policy of the courts is to save the valid provisions. *Matter of Colegrove,* 221 N. Y. 455; *Kalish* v. *Kalish,* 166 id. 368; *Matter of Central Union Trust Co.,* 193 App. Div. 292. Nor will a construction now be given invalidating the trust in anticipation of the actual happening of the event, especially when the alleged invalid contingency may never result. *Matter of Mount,* 185 N. Y. 162, 170; *Matter of Franklin Trust Co.,* 190 App. Div. 575, 577; *Beers* v. *Grant,* 110 id. 152; affd., 185 N. Y. 533; *Matter of Robert J. Horner,* 120 Misc. Rep. 450; affd., 206 App. Div. 741.

The second ground urged for breaking down the trusts is that an ademption of the legacy resulted because the testatrix in her lifetime entered into an agreement for the sale of the stock bequeathed

by her as the trust property. The contention has no merit. The agreement of sale, made by Mrs. Drake in her lifetime, as well as the will, contemplated and provided for the sale of the stock after the death of the testatrix. It was her expressed intention that in the event of sale the proceeds were to be substituted in place of the stock as the *corpus* of the trust.

The third method urged to break down the trust is the request for the direction of the payment of a very large part of the proceeds of the stock to the life tenants as income upon the theory that the value of the stock has been substantially increased by profits of the business since the death of the testatrix. This question as to the amount, if any, of income payable to the life tenants from the trust may be reserved for a supplemental decree and direction in this proceeding, when the sale is completed.

I have carefully considered the situation in which the sale of the stock was made, the price offered, the possibility of competition and the value of the business as testified to by several experts. While the profits earned appear to be large, I am of the opinion that the terms of the sale are reasonable and should be confirmed, especially because of the speculative nature of the business. The executor should promptly deliver to the trustees the proceeds of the sale of the restaurant stock.

Submit decree and proceed with the account accordingly.

Decreed accordingly.