In the Matter of the Will of MORRIS ROTH, Deceased.

Surrogate's Court, Kings County, October 27, 1944.

*Lloyd B. Kanter* and *Jay R. Levinson* for Pearl Roth, executrix and life tenant of trusts, and Jacob Steinberger and Benjamin Davidson, remaindermen.

*Lewis Singer* and *Conrad S. Keyes* for Jesse Roth, executor and remainderman.

*James N. Vaughan* and *Eli M. Spark* for Frederick Roth, Rebecca R. Abrams and Rose R. Goldsmith, remaindermen.

*Harry Mitchell* for Paul Labinson, remainderman.

*Leon S. Milmed* and *Hyman I. Barnett* for Ida P. Pollack, remainderman.

*Sylvia Miller* for William Mayer, remainderman.

*Baker, Obermeier & Rosner* for Jewish Hospital of Brooklyn, remainderman.

*Herman S. Bachrach,* special guardian.

*Roeder & Roeder* for Herman Walowitz, remainderman.

*. Benjamin Cohn* for Otto Neumann as administrator of Bertha Neumann, deceased, life beneficiary of trust.

*Mudge, Stern, Williams & Tucker* for Meier Steinbrink, executor.

*Crawford W. Hawkins* of the Office of Alien Property Custodian, for Jenny R. Frank, Johanna Steinberger and Ida Steinberger, nieces of testator.

McGAREY, S. Testator died September 29, 1941, survived by his wife and nephews and nieces who are his statutory distributees. He left a will, dated July 11, 1912, which was admitted to probate on August 21, 1942.

In this proceeding the widow seeks a construction of articles " FOURTH ", " FIFTH ", SIXTH " and "EIGHTH " of the will. Doubt has been cast upon the effect of these provisions by reason of certain facts extrinsic to the instrument. At the date of execution of the will, testator was engaged with his partner in the cotton converting business. On that day, as indicated in the will, he entered into a new partnership agreement with his partner. On July 26, 1916, he and his partner entered into a new agreement, which apparently superseded the 1912 agreement and provided for a continuation of the partnership business until November 30, 1918, or possibly for an indefinite period thereafter, subject to termination by the giving of specified notice by either partner. Testator was adjudged incompetent on February 13, 1918. Thereafter, the partner sought to terminate the partnership and, with the approval of the Supreme Court, Kings County, the testator's committee accepted an offer by the copartner of $200,000 for testator's interest in the part-

nership, and in due course received the proceeds. Testator continued incompetent until his death, and it is not disputed that no part of such proceeds was either required or used for his maintenance.

The will consists of ten numbered provisions. Article " FIRST " contains the usual direction to pay debts and funeral expenses and article " SECOND " provides for the appointment of the executors and trustees. Article " SEVENTH " contains a bequest to the widow of all household and personal effects and article " NINTH " declares that all provisions for the widow are to be in lieu of dower. Article " TENTH " constitutes an *in terrorem* clause in customary text. The only dispositive provisions (other than article " SEVENTH ") are contained in articles " FOURTH ", " SIXTH " and " EIGHTH ", each of which directs the erection of a trust for designated income beneficiaries and remaindermen. Article " THIRD ", while merely declarative of testator's partnership interest, is material to an understanding of his intent, and reads as follows:

" THIRD: I am at present a partner in the firm of ROTH & LASK, composed of myself and Moses Lask, conducting the business of cotton converters and dealers in cotton goods and kindred articles at No. 175 Greene Street, in the Borough of Manhattan, City of New York, under an agreement in writing, dated July 11th, 1912.

" I have at present an equal interest in said co-partnership with my co-partner, Moses Lask, amounting to the sum of $41,389.59, and in addition thereto, excess moneys in said business over and above my said interest amounting to the sum of $30,576.21.

" The said agreement provides, among other things, that in the event of my death before the expiration of the said agreement none of the moneys representing my said equal interest in said co-partnership business or said excess moneys invested be withdrawn from the said business until the expiration of the said agreement, but that interest at the rate of six per cent, per annum shall be paid to my legal representatives on the amount representing the value of my interest in said co-partnership business at the time of my death, weekly and on said excess moneys, quarter-annually, on the first days of March, June, September and December."

Article " FOURTH " reads as follows:

" FOURTH: I HEREBY GIVE AND BEQUEATH unto my said Executor and Trustee my said one-half equal interest in the said co-partnership business at the time of my death subject to the

conditions imposed by said agreement and in trust, nevertheless, to and for the following purposes: .

" I WILL AND DIRECT my said Executor and Trustee to pay to my beloved wife, PEARL ROTH, each week, the said weekly interest at six per cent on my said equal interest in said co-partnership business, to be used by her for her support and maintenance during her lifetime absolutely.

" At the expiration of said co-partnership, in the event that my said co-partner elects to purchase my interest in said co-partnership for cash, or in the event that said business be liquidated, by him, as provided by said agreement, and my said beloved wife be then living I give and bequeath unto my said Executor and Trustee, the amount of money paid for and representing my equal one-half interest in said co-partnership business, upon such purchase or liquidation, hereby willing and directing that my said Executor and Trustee reserve the said trust fund and safely and conservatively invest the said moneys in first mortgages on improved real property in the Borough of Brooklyn, City of New York, yielding a regular interest or income, and guaranteed by the Title Guarantee & Trust Company of the City of New York, and to pay said interest or income to my said beloved wife to be used by her for her maintenance and support during her lifetime absolutely.

" IN THE EVENT of the death of my said beloved wife, PEARL ROTH, before the purchase of my said one-half interest for cash or before the liquidation of said business, I hereby direct my said Executor and Trustee to pay over the said weekly interest, as follows: Three-fourths to my beloved nephew, JESSE ROTH, and one-fourth to HERMAN WALOWITZ, who is at present in my employ, and upon such purchase or liquidation to divide the money, representing my said equal one-half interest in said co-partnership between my said beloved nephew, JESSE ROTH, and my said Clerk, HERMAN WALOWITZ, in like ratio, to-wit: three-fourths to Jesse Roth and one-fourth to Herman Walowitz, said moneys to be theirs absolutely and forever.

" IN THE EVENT that my said beloved wife shall die after the said moneys representing my one-half interest shall have been invested in guaranteed first mortgages, as aforesaid, then I will and direct my said Executor and Trustee upon her said death to transfer to the said JESSE ROTH and HERMAN WALOWITZ, the legal title to the said guaranteed first mortgages and all accumulations of interest thereon, in like ratio, to-wit: three-fourths to Jesse Roth and one-fourth to Herman Walowitz, to be theirs absolutely and forever."

Article "FIFTH" provides for gift over to Jesse Roth of the share in the remainder of the trust bequeathed to Herman Walowitz in the event of the latter's death "before my said executor and trustee can carry out any of the provisions of said trust created for his benefit."

Article "SIXTH" creates a trust during the life of a designated beneficiary with remainder to two nieces and a nephew, *nominatim*. The subject matter of the gift in trust will hereinafter be more fully discussed.

By article "EIGHTH" testator gave to his executor and trustee "all the rest, residue and remainder of my estate (being all of my property, real, personal and mixed, of whatsoever kind or nature, and wheresoever situated, except my equal one-half interest in said co-partnership business and excess moneys invested therein, over and above said interest)" in trust, to pay over the income thereon to his wife during her lifetime. Upon her death he directed the executor and trustee to divide such residuary estate into specified percentages, which he gave unconditionally to three employees, two nephews and to a charitable institution. He then further provided as follows: "IN THE EVENT that any of the said beneficiaries who are now in my employ shall leave said employ before my death, I will and direct that the share of such employee leaving my employ before my said death, shall be divided equally between the said Benjamin Davidson, Jacob Steinberger and the Jewish Hospital of Brooklyn."

It is contended in behalf of the widow, the remaindermen of the residuary trust and the special guardian for certain of the statutory distributees that the gifts in trust provided for in articles "FOURTH" and "SIXTH" constitute specific legacies. It is argued that either by the expiration of the agreement of 1912 or by the sale in 1918 by the committee to the copartner of the decedent's interest in the partnership, the subject matter of the specific legacies ceased to exist, and ademption with respect to such gifts in trust resulted. The effect upon the testamentary plan of the foregoing construction is urged by the parties in full awareness of the consequent disinheritance of the remaindermen of the bequests in trust. Ademption, they point out, is a rule of law which operates without regard to the intent of the testator, or the hardship wrought thereby. In opposition, the other parties in interest claim that the provisions in articles "FOURTH" and "SIXTH" constitute gifts in trust of the partnership interest and excess moneys therein referred to, or the proceeds thereof. There is the further contention by some of the

parties that the decedent died intestate as to the partnership interest and excess moneys or the proceeds thereof.

The rule of ademption relates only to specific legacies and is inapplicable to general or demonstrative legacies. (2 Davids on New York Law of Wills, § 1111, and cases cited.) Nor does the rule operate when the proceeds of the subject matter of the specific gift or devise are given in substitution therefor. (2 Davids on New York Law of Wills, § 1119; *Hoffman* v. *Steubing,* 49 Misc. 157; *Matter of Nellie B. Drake,* 121 Misc. 769.)

In construing a will, it is the court's duty to seek, if possible, to ascertain the intent and desire of the testator in the language used by him in the will, and, if not prevented from doing so by some other rule of law, to give effect to that intention. Where there are two rules of construction which might be applied to a particular will or provision of a will one of which will effectuate the testator's intention as expressed in his will and the other of which would do violence to that expressed intention, it is the court's duty to apply the rule or construction which will give greater effect to the testator's expressed intent. (See *Matter of Bauer,* 289 N. Y. 326.)

The testamentary plan disclosed by the will bears evidence of the careful consideration given by the testator to the material assets which he then possessed. Positive proof of such consideration is found in the exact references in the will (art. " Third ") to his interest in the partnership and the monetary value thereof. Again, in article " Eighth " testator indicates doubt that the percentage of the remainder of the trust therein created which was bequeathed to the Jewish Hospital of Brooklyn would be adequate to permit the endowment of a bed for needy patients, to which purpose he wished and desired the gift to be applied. Such overt evidence of the testator's desire to dedicate substantial portions of his estate to his " beloved wife " and his " beloved nephew " cannot be ignored and should be given effect, if possible. These were the persons who appear to have had first claim upon his bounty. They are the only beneficiaries to whom he attached a term of endearment, and in whom he placed the greatest confidence by his nomination of them as alternate executors. To say that the bequests in trust, for their benefit, and for the beneficiaries under article " Sixth ", were intended to be specific, and nothing more, is to say in effect, that he limited and conditioned his bounty to them, upon the sole contingency of his being engaged in partnership under the very agreement, executed concurrently with the will. While his death prior to the expira-

tion of the agreement of partnership was a reasonable possibility, it cannot logically be said that only upon such contingency eventuating, did the testator intend the gifts under articles " FOURTH " and " SIXTH " to be effective. Each direction to the fiduciary, and each of the dispositive phrases found in the several paragraphs of both articles " FOURTH " and " SIXTH " are predicated upon the assumption of testator's death prior to the expiration date of the partnership agreement. The failure of the testator to expressly recognize the possibility of his outliving the agreement is however no basis for attributing to him an intent to withhold his bounty, except upon the occurrence of a precise condition. It is reasonable to assume that testator as a business man anticipated his continuing in business, and with knowledge of the uncertainties thereof, declined either to provide therefor, or to fix at that time the monetary values of the gifts. He may have believed that the will covered every possibility. It is futile, however, to guess at the vagaries of will makers. The fact is, he did not do so, and his failure should not require the ultimate conclusion that effects such distortion to his plan, if he intended otherwise, and his words give some basis for ascertainment of such intention. (*Matter of Watson*, 262 N. Y. 284.)

Article " FOURTH " is composed of five separate paragraphs. In and of itself it constitutes a complete plan for the administration of so much of testator's property as was invested at the moment of his death in the partnership of which he was a member. The court assumes, and nothing to the contrary has been disclosed by the parties, that this investment represented the major portion of his material wealth in 1912. It was therein dedicated to the two persons who appear to have had the greatest claim upon his bounty. Each of the five unnumbered paragraphs of the article contains dispositive language. Each of the five separate directions is designed to guide the fiduciaries in the execution of the trust under the various factual situations which the testator envisaged as possible of occurrence from the point of his death to the termination of the trust. Each direction assumes the existence of the partnership agreement and gives due cognizance to its terms. In the first two paragraphs the text refers to " my said one half equal interest in the said co-partnership business at the time of my death subject to the conditions imposed by said agreement " and " my said equal interest in said co-partnership business." In the third paragraph " the amount of money paid for and representing my equal one-half interest in said co-partnership business " is

made the subject matter of a present gift, to which is added the further direction to "reserve the said trust fund and safely and conservatively invest the said moneys." In the fourth paragraph the fiduciary is directed to divide "the money, representing my said equal one-half interest in said co-partnership between \* \* \*, said moneys to be theirs absolutely and forever." Again in the fifth paragraph the text deals with "the said moneys representing my one-half interest" and provides that upon the death of the widow, the fiduciary transfer to the remaindermen the legal title to "the said guaranteed first mortgages" in which testator had directed the investment of the trust fund.

Those contending for ademption lay great stress upon the testator's choice of words in the first two paragraphs. Under other circumstances the subject matter of gifts expressed in like words has been held to be specific. To place entire reliance upon those two paragraphs, however, is unjust to the testator. Each paragraph of article "FOURTH" is an integral part of an entire plan, the ultimate purpose of which was the erection of a trust, not out of an intangible bundle of rights, to wit, the interest in the partnership, but out of money to be realized on the sale of such interest. In his choice of language the testator resorted to phrases containing the word, money, more often than he selected the words "my equal one-half interest in said co-partnership business." Moreover, the use of the latter phrase in the first two paragraphs is in complete accord with the plan. At the moment of death he could give nothing but the intangible equal interest in the business, for the agreement withheld from his legal representative the monetary value thereof for some time at least. But he did not stop there, for he gave the money to be realized, as well, and gave it as of the moment of death, subject to reduction to possession by his fiduciary.

Having thus analyzed the words used in the will by the testator and the intention thereby expressed, the court is of the opinion that the subject matter of the gifts in trust under articles "FOURTH" and "SIXTH", while specific legacies in nature, included a gift, in substitution for the specific item, of the proceeds thereof, upon a sale or liquidation of the business.

No one will deny that if the exact situation envisaged by the will, to wit, the death of the testator prior to the expiration of the agreement of 1912, had eventuated, the proceeds of the one-half interest in the business upon liquidation, would have been payable to the trustees hereunder. What material change

then, has occurred, which requires such distortion to the testamentary plan? The very thing given is still in the hands of the committee, albeit in the form of investments and reinvestments, which are, however, readily traceable to the original moneys received by the committee. The thing given has not been lost, sold, consumed, or destroyed, and ademption cannot be said to have resulted. (*In Re Barrows' Estate,* 103 Vt. 501 [1931], and cases therein cited.) Nor does *Matter of Ireland* (257 N. Y. 155), upon which those contending for ademption so strongly rely, require a different result. It was clearly pointed out (*supra,* p. 159) that the thing there given was shares of preferred stock, and not the proceeds thereof. Moreover, when a testator becomes incompetent subsequent to the execution of his will, he no longer possesses that testamentary capacity required by statute to validly alter or revoke his will. In a sense, his existing will becomes irrevocable. The ademption of a specific bequest or devise therein contained, by the act of his committee, is supported by a legal fiction which charges to him the necessary intent. Thus, in *Matter of Ireland* (*supra*) the proceeds of sale of the specific bequest were used for the testator's support and maintenance. In holding that the sale by the committee worked an ademption, the court was clearly sanctioning a partial revocation of the will without its maker's consent, upon the theory that it could not say, under the circumstances of the case, "that a man in his right mind would not under such contemplation have changed his will."

Everything hereinabove said in respect to article "Fourth" is applicable to article "Sixth". The plan, language and intention disclosed are identical with article "Fourth". Only the beneficiaries and subject matter of the gift vary. Here the testator dealt with "the excess money invested in said co-partnership business over and above my said equal one-half interest in said co-partnership business" and "the amount of money paid for and representing in said co-partnership business the said excess money." In addition, in article "Eighth" of decedent's will, the testator, in giving the residue of his estate in trust identified such residue as "being all of my property, real, personal and mixed, of whatsoever kind and nature and wheresoever situated, except my one-half equal interest in said co-partnership business and excess monies invested therein, over and above said interest." It is therefore apparent that the testator desired that his residue of his estate should not include his partnership interest and the excess moneys invested therein in excess of such partnership interest

and that that portion of his estate representing such interest and excess moneys should be governed by the provisions of articles " FOURTH " and " SIXTH " of his will. The purpose and spirit of the testator, however, in dealing with each trust, are in no way divergent. In the final settlement only the quantum of the gift will be different, and this was inherent in the gift. In either case, the thing given, X dollars, was received by the committee, and is still in its hands, in the form of investments and reinvestments. Upon the proof before it, the court cannot fix the value of the gifts. Such determination must in any event await the settlement of the committee's account. If the parties in interest are unable to amicably agree upon a basis for adjustment of their respective rights, the court will take proof thereon as a preliminary to determination of the exact rights of· the trust estates. The equitable formula applied in *Matter of Potter* (244 App. Div. 130, affd. 269 N. Y. 545) appears to be a fair basis for settlement of the rights of all concerned.

The remaining question for consideration concerns the effect of the gifts of specified percentages of the remainder of the residuary trust, made to three employees of the testator. Each of the three legatees was in the employ of the partnership prior to the execution of the will, and continued in such employ to and subsequent to the adjudication of testator as incompetent, and the liquidation of his interest in the business. One of them, in fact, remained in the employ of the liquidating partner, until the latter's death in 1934. They were not, however, in testator's employ at the date of· his death, and the question posed is whether they had left testator's employ within the meaning of the condition which he attached to the gift to them. In brief, it is argued by the employees that the words " shall leave said employ before my death " clearly and unequivocally limited the gift to them only in the event of their voluntary separation from or abandonment of his employment. Since the incompetency of the testator and his consequent inability to continue in business is not attributable to them and placed it beyond their power to remain in his employ, they never voluntarily left his employ and qualified to receive the gifts. The contention of the employees is supported by the exact and literal meaning of the testator's words. On the other hand, those of the remaindermen under article " EIGHTH " who will benefit by the alternate gift of the employees' shares seek to ascribe a much broader scope to the language in which the condition is expressed. They maintain that the bequests

could vest in the employees only if they were in his employ at the date of his death, and that the words of the testator import cessation of employment from any cause whatsoever. They conclude accordingly that the employees have not complied with the broad intendment of the condition prescribed by the testator and are not entitled to share in the remainder of the trust.

Phrases alike to that employed by the testator have hitherto been the subject of judicial construction. (*Price* v. *Minot,* 107 Mass. 49, 60; *Gardner* v. *Metropolitan Life Ins. Co.,* 225 Mass. 439; *Ambrose* v. *Metropolitan Life Insurance Co.,* 18 N. J. Mis. Rep. 42; *Turley* v. *J. Hancock M. L. Ins. Co. et al., Ap.,* 110 Pa. Superior Ct. 578; *Muesling* v. *International Railway Co.,* 85 Misc. 309.) In each instance contractual rights of an employee were involved, and the text of the writing from which the rights sprang was liberally construed in favor of the employee, and against the employer or other contracting party. In each instance the draftsmanship of the writing was attributable to the employer or other party, and under such circumstances general principles of the law of contracts justify a strict construction of the instrument against the author. Where the rights of the employee arise under a will, a different problem is presented. Consideration is of no moment, for the testator could have given or withheld his bounty, and when extended, could attach to it, reasonable conditions. The intent of the testator is the goal, and, "We have  *  *  *  only one rule to follow  *  *  *  it is fundamental. The intention of a will-maker is to be found in the words used in the will, and when these are clear and definite there is no power to change them" (*Matter of Watson,* 262 N. Y. 284, 293, *supra*).

The words of the testator afford no scope for speculation. By all standard definitions the words "shall leave said employ before my death" import a voluntary act on the part of the employees. That was the meaning adopted by the courts in each of the group of cases hereinbefore cited. Although such construction attributes to the testator an intent to benefit these employees regardless of their dishonesty, incompetency or other just cause for discharge from his employment, the court may not read into the will an intention which his words belie. The court does not intend to imply, however, that had the employees been discharged by the testator from his employment by reason of dishonesty or incompetency or any other act on their part justifying such discharge, they would nevertheless be entitled to receive their legacy. Such issue has not been presented and could not be presented under the facts disclosed in

this proceeding. Had it been presented, the court might well hold that such voluntary act on the part of the employee justifying his discharge would constitute a leaving of the employment so as to deprive the employee of the benefit of the legacy to which he would otherwise be entitled. It is the testator who has fixed and defined the condition in clear and precise words and the court must give effect to them as written. (*Matter of Watson, supra.*)

Nor do the words of the testator require duration of the employment until the moment of his death. The alternate beneficiaries contend that the text of the provision impliedly requires as a prerequisite to vesting in the employees the existence of a business carried on by the testator, at his death, and employment therein by the beneficiaries. If the testator intended continuance in his employ until his death, he did not say so, and there is nothing in his words to give basis for such construction. His failure to unequivocally make employment at his death a limitation upon his bounty, strongly supports the conclusion that he did not so intend. The court so holds, and thereby renders academic the issue of whether impossibility of performance on the part of the employees is or is not excusable. Under the holding of the court there was precise and literal performance within the scope of the condition imposed by the testator, and the employees thereby became entitled to the bequests to them. There is no need, therefore, for the court to consider or discuss the cases cited by the parties, which hold that where the testator has required compliance with a stated condition, the beneficiary of the gift may show that literal performance of the condition was rendered impossible by some act of the testator in his lifetime.

Submit decree on notice in accordance herewith.