Edward M. Horey, S.
In the accounting proceeding in this estate, it becomes necessary to determine by construction the nature of a legacy given by the decedent in the following paragraph of his will: "SECOND: I direct that my executor, hereinafter named, sell my house and lot at 22 Second Avenue, in the Village of Franklinville, County of Cattaraugus *176 and State of New York, as soon after my death as, in his judgment, is practicable; and I direct that the proceeds of such sale shall be divided equally among the children of my deceased son, Harold B. Wallace.”
The basic facts are conceded by stipulation of the parties. The will was drawn and executed by the testator on October 9, 1959. The house and lot at 22 Second Avenue, in the Village of Franklinville was subsequently sold by the testator in his lifetime. The sale effected in 1968 realized the sum of $5,710.82. The proceeds of sale were deposited in an existing savings account of the decedent standing in the amount of $332.53. Additions to and withdrawals from the account were later made by the decedent. The balance of principal at the date of death was $5,655.63. That principal, together with a credit for accrued interest would leave the total amount of the account at the time of death slightly in excess of the balance that existed immediately after the deposit of the proceeds of sale. Death occurred in 1973. The subject will was admitted to probate October 26, 1973. Save for judicial settlement and distribution the administration of the estate is completed.
It is the contention of the executor that the inter vivos sale of the specified house and lot effected an ademption and the proceeds of sale should pass to residuary legatees. It is the contention of the guardian ad litem for infants that there was no ademption and that the proceeds of sale available in the interest account should be divided among them as named beneficiaries.
The section of the EPTL which is applicable is 3-4.3. It provides in part as follows: "A conveyance * * * by which an estate in his [testator’s] property, previously disposed by will, is altered but not wholly divested does not revoke such disposition, but the estate in the property that remains in the testator passes to the beneficiaries pursuant to the disposition. However, any such conveyance, settlement or other act of the testator which is wholly inconsistent with such previous testamentary disposition revokes it.”
The difficulty with the statute is that its application requires a prior determination.
Whether or not a testamentary bequest or devise has been "altered but not wholly divested” by a later inter vivos conveyance and whether such later inter vivos conveyance is "wholly inconsistent” with the testamentary disposition de *177 pends upon the kind of testamentary bequest or devise that was given.
The law appears clear that if a testamentary disposition is a "specific” one, a subsequent conveyance by the testator in his lifetime revokes it. Contrariwise, if the testamentary disposition is a "general” one, a later inter vivos conveyance does not revoke the bequest or devise.
"The rule of ademption relates only to specific legacies and is inapplicable to general or demonstrative legacies.” (Matter of Roth, 183 Misc 834, 839, mod on other grounds, 271 App Div 972, affd 297 NY 757; to the same effect, 4B Warren’s Heaton, Surrogate’s Courts, § 406, par 8 [aaaa].)
Most difficulty ensues in that instance in which it is asserted that the disposition involved is neither "specific” nor "general”, but rather "demonstrative”.
By definition, a demonstrative disposition is a "testamentary disposition of property to be taken out of a specified or identified property”. (EPTL 1-2.3.)
It is the attributes of a "demonstrative legacy” that form the root causes of the problem. A demonstrative legacy is in truth a chameleon in the law of testamentary dispositions. It takes on aspects of both a general and a specific disposition. It "partakes of the nature of a general legacy by bequeathing a specified amount and also of the nature of a specific legacy by pointing out the fund from which the payment is to be made”. (Crawford v McCarthy, 159 NY 514, 519; 9 Rohan NY Civ Prac, par 1-2.3[1].) However, once the difficulty of classification is overcome the law in reference to ademption of a demonstrative disposition is as fixed as it is in the instance of a general and specific disposition.
It is established that a testamentary disposition which is "demonstrative” is not revoked by a subsequent inter vivos conveyance. (Matter of Roth, supra; 4B Warren’s Heaton, Surrogate’s Courts, § 406, par 8 [aaaa].) This result stems from the fact that while a demonstrative legacy or devise is charged against a particular asset, it is, nevertheless, solvable from any property in the estate if the particular asset against which it is charged has been disposed of. It is this attribute of payment from any property in an estate that gives the demonstrative legacy or devise the quality of a general legacy or devise. Such attribute is essential to a demonstrative legacy or devise because by definition and established rule, a demonstrative legacy must possess all of the qualities of a general legacy *178 or devise. Since one of the qualities of a general legacy or devise is payment from any estate property, it follows with geometric logic that such quality is one of a demonstrative legacy or devise. It is this equivalent requirement of a demonstrative disposition to a general disposition that Surrogate Wingate points out is often not comprehended or applied. It leads to the confusion of case decisions. (See Matter of Small-man, 138 Misc 889, 902-903.)
As to judicial precedents, Surrogate Wingate observed, in his review in 1931, that the decisions of whether particular testamentary dispositions were specific or demonstrative were in "hopeless conflict”. (Matter of Smallman, 138 Misc 889, 902.) The excellent briefs submitted by the guardian ad litem and counsel for the executor, together with this court’s review of the law, confirms the accuracy of the learned Surrogate’s observation and confirms that case decisions are still irreconcilable. The following are examples in point:
A gift of specified sums out of the sale price of certain stocks were held to be specific bequests in Matter of Phillips (108 Misc 413) and Matter of Meek (113 Misc 301).
A gift of the balance of proceeds of the sale of personal property after the payment of funeral expenses was held a specific bequest in Matter of Brett (57 Hun 400).
Contrariwise, in Matter of Miller (118 Misc 877), the court determined that a gift of $300 "out of the money that will be realized from a sale of’ specified property was a demonstrative legacy and was not adeemed by a prior conveyance.
Similarly, in Matter of Lord (134 Misc 198), a bequest of $25,000 with a direction that the executor sell so much of decedent’s jewelry as would be necessary to produce the $25,000 was held to be demonstrative.
The compilation and review of other and later decisions in 45 ALR 3d 16 (superseding earlier annotations in 119 ALR 1387 and 165 ALR 1032) points out that conflict in judicial precedent continues and is not peculiar to this State, but exists in a number of jurisdictions.
In distinguishing specific and demonstrative dispositions the judicial application of legal principles, the logic and reasoning which lead to prior decisions are far more meaningful than the decisions that were reached.
In the instant case, the testamentary disposition clearly relates to a segregated item, to wit: the "proceeds of * * * *179 sale” of a "house and lot at 22 Second Avenue, in the Village of Franklinville”. Such segregation gives specificity to the testamentary disposition. In contrast to proceeds from the sale of realty generally, here, only the proceeds of sale of the particular property will satisfy the bequest in issue. There is no indication that the testator intended the legacy to be paid from any asset other than the sale of "the house and lot at 22 Second Avenue”. No alternative to the bequest of the proceeds of the specified house was provided. It is this feature which distinguishes the instant case from allied cases in which a testator makes an alternative bequest of a particular asset or the proceeds in the event of sale during his lifetime. (Cf. Matter of Caldwell, 6 Misc 2d 110; Matter of Drake, 121 Misc 769.)
Whether the instant bequest is one to be "taken out of specified or identified property” (reference EPTL 1-2.3) and thus demonstrative and not adeemed, or a bequest of "a specified or identified item” (reference EPTL 1-2.16) and thus specific and adeemed is as difficult to determine as it is important. The court views it significant that no fixed sum is charged against the proceeds of sale. In defining a demonstrative legacy our Court of Appeals said in Crawford v McCarthy (159 NY 514, 519, supra) "[a] demonstrative legacy is a bequest of a certain sum of money, stock or the like, payable out of a particular fund or security”. (Italics added.) In finding a demonstrative disposition, other New York courts have required a "specific amount” to be stated as a charge against identified property. (See Matter of Anslinger, 185 Misc 827; Matter of Kingsley, 67 NYS2d 464; Matter of Miller, 118 Misc 877, supra.) In Matter of Matthews (122 App Div 605, 607) the court said with judicial fiat "[t]he proceeds of a sale of specified property, which is directed by the will to be sold, are just as much a specific legacy as if the property itself had been given.” Since the bequest in issue is an express gift of a segregated item and the whole thereof, in contrast to a stated sum charged against it, this court holds that it is not a demonstrative, but a specific legacy.
Under accepted rules which have been noted, the determination of a specific legacy would conclude the matter. In the instant case it does not. This is for the reason that it is argued that even if the proceeds of sale are properly classified a specific legacy, there should still be no ademption because such proceeds were not disposed of by the decedent, but exist *180 in the savings account. All that the decedent did, it is urged, is to expedite the sale required by the executor. Since it was the proceeds of sale of the specified property that were bequeathed and since they are identifiable and available, it is urged that the executor merely carry out his second directed function and pay them over to the named legatees. This is certainly a novel, thoughtful and persuasive argument.
Conceding that the court has found no determined judicial precedents to support it, it is, nevertheless, the opinion of the court that the flaw in the argument advanced is that it seeks to transform the bequest which was made into a bequest that was not made. The testator did not bequeath the proceeds of a sale made in his lifetime. He bequeathed the proceeds of a sale made after his death. This difference, in the judgment of the court, is not one of "change 'in name or form only’ ”. That is a proper consideration in determining a question of ademption. (Matter of Brann, 219 NY 263, 267; reasserted Matter of Van Tilburg, 77 Misc 2d 77, 78.)
Why the decedent effected a sale of the property in his lifetime is a matter of speculation. It takes little imagination to conceive of reasons, other than expediting payment, which would have prompted the decedent to effect a sale. It takes less imagination to conceive of the great number of factors which could substantially change the amount of proceeds realized between the two sales. Willing to bequeath one, it is again, a matter of speculation that the testator was willing to bequeath the other. Certainty and not speculation should be the basis of awarding testamentary dispositions.
At any rate, ademption in this State is no longer dependent upon the intention of a testator. "What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change”. (Matter of Brann, 219 NY 263, 268, supra; Matter of Wright, 7 NY2d 365, 367-368.) Since in the view of the court the proceeds of sale which are extant do not constitute the legacy bequeathed, the general rule of ademption applies. Accordingly, the court holds that the legacy fails and the legatees take nothing. The proceeds of sale pass under the residuary estate as the executor has provided in his final account.