## In the Matter of the Estate of HENRY TUCK, Deceased.

Surrogate's Court, New York County, November 13, 1937.

*White & Case,* for the petitioner, the New York Trust Company.

*Meighan & Necarsulmer,* for Carlton W. F. Tuck, grandson.

*Coyne & Armbruster,* for the petitioner, Elenore B. Tuck, as trustee.

*Chrystie & Chrystie,* for James Harper Skillin, individually and as executor, etc., of Rosamond Tuck Skillin, deceased.

*John B. Doyle,* for Henry W. Tuck, individually, and Mathilda Marie Tuck, individually and as executrix, etc., of Shirley R. Tuck, deceased.

*William B. Parsons,* special guardian for Ann Tuck.

*De Forest, Cullom & Elder,* for the Charity Organization Society of the City of New York.

*Jackson, Fuller, Nash & Brophy,* for Nellie Tuck, widow of Shirley R. Tuck, deceased.

FOLEY, S.   A preliminary question of construction in this accounting proceeding has been determined by the surrogate.   (*Matter of Tuck*, 165 Misc. 346.)   There remains for disposition the determination as to who is entitled to certain income of the residuary trust.

The pertinent paragraphs of the will provide as follows:

" *Seventh.* All the rest and residue of my property of every kind and description, real, personal and mixed, now owned by me or that may be owned by me at the time of my death, I give to my said Trustees in trust, to receive the rents, income and profits thereof until the death of Elenore B. Tuck, to pay in quarterly instalments; two-fifths (2/5) of such rents, income and profits to my wife, Elenore B. Tuck and one-fifth each to my children, Shirley R. Tuck, Henry W. Tuck and Rosamond T. Skillin.

" In case Nellie, wife of my son Shirley R. survives him, his fifth share of the income of my estate is to be paid her as long as she remains unmarried.   In case James H. Skillin, husband of my daughter Rosamond survives her, her fifth share of the income of my estate is to be paid him as long as he remains unmarried.

" *Eighth.* On the death of my wife, Elenore B. Tuck, I give, devise and bequeath my entire estate in trust to the New York Security & Trust Company; the income of said estate (except as much thereof as is provided for in Section 7, to be paid to Nellie Tuck and James H. Skillin), to be paid quarterly, share and share alike to such of my children as shall at that time, namely immediately upon the death of my wife, Elenore B. Tuck, be living, and to the descendants then living of such children of mine as shall have died before said date; such descendants to take the share the parent would have received had he or she then been living.   *   *   *

" *Ninth.* It has been my intention by devises and bequeaths hereinbefore made, to dispose of all my property.   If for any reason whatsoever I have not done so, I direct that any property not so disposed of, shall be divided equally among my children and the descendants of any children who shall not survive me; such descendants to take the share their parent would have taken if it had survived me."

An alternative provision in paragraph eighth bequeathed the entire residue on the death of the testator's wife to certain charitable institutions in the contingency that she survive all of his children and their descendants.

The testator's three children and his widow survived him.   The trust is still in existence.   His son Shirley has since died.   The testator's daughter Rosamond received one-fifth of the income of the trust until her death on February 6, 1932, and thereafter such

income was paid by the trustees to her husband, James H. Skillin, until his remarriage on April 26, 1933. That event, under the will, terminated his right to income. As a result of his remarriage the present controversy arose. The trustees now hold one-fifth of the income of the residuary trust accumulated since his remarriage, and they seek a determination as to the person or persons entitled to such balance and to future income in that fractional share.

The will was apparently prepared by the testator himself rather than by an experienced lawyer. At least, no lawyer has come forward to claim its parentage nor has the draftsman been discovered.

There is no language in the will which in express terms operates to distribute this one-fifth share of the income. The following questions are, therefore, presented: Did it pass under the provisions of paragraph ninth to the three children who survived the testator? Or did it pass by virtue of section 63 of the Real Property Law to the presumptive owner or owners of the next eventual estate?

The testator's daughter Rosamond T. Skillin and his son Shirley R. Tuck died without issue. In their wills they designated their respective spouses as sole residuary legatees. The executors of their estates contend that the income in dispute passed as undisposed of property to the children of the testator living at his death or to the representatives of their estates, under the provisions of paragraph ninth of the will. If their contentions are correct, James R. Skillin, the husband of Rosamond, and Mathilda Tuck, the widow of Shirley, would become entitled as such sole residuary legatees to one-third each of such one-fifth income during the lifetime of the widow. Henry Tuck, the surviving son, would become entitled to the remaining one-third. Under my interpretation of the testator's express intent these contentions must be overruled.

I am of the opinion that there was a complete and valid disposition of the entire fund, including the one-fifth share of the income previously paid to James H. Skillin, under the language of paragraphs seventh and eighth and under the pertinent provisions of law affecting the devolution of property in effect at the date of the death of the testator.

The purposes of the testator are plainly apparent in the disposition of his residuary estate. They were (a) a division of the income into fifths; (b) what might be termed the primary trusts were measured in general by the life of the widow; (c) upon her death a new disposition was made of the income to the children surviving her or to the descendants of those who predeceased her; (d) no limit of time was fixed for the payment of such income; no specific

condition was imposed that the income should be paid to such surviving children or descendants for the period of their lives or for any other period; (e) there was expressly carved out of these secondary gifts by the matter within the parentheses in paragraph eighth, the income benefits for the widow of Shirley and the husband of Rosamond until each died or remarried; the income directed to be paid to them was clearly intended to continue until the happening of either of these events, even after the death of the widow; the income payable to the designated widow of Shirley, therefore, continues until her death or remarriage, whether such events occur before or after the date of death of the widow of the testator; (f) knowledge of those provisions of the law which dealt with the mode of payment of undisposed of income must be imputed to the testator and read into the will as a part of his intent. Additional support for the interpretation adopted by the surrogate is found in the general demonstrated purpose of the testator to confine as far as possible the distribution of his property to the relations of his blood.

Finally, when paragraphs seventh and eighth are considered in the light of the analysis just made, as compared with paragraph ninth, the testator's plan of disposition becomes even clearer. In my opinion, the so-called catch-all provisions of paragraph ninth, by which he gave his undisposed of property to his surviving children, were intended by the testator to cover a lapse or failure to dispose of principal items or outright parts of his estate, rather than dispositions of income which had failed during the trust period. They never became effective to interfere with the harmonious and complete plan of distribution contained in paragraphs seventh and eighth.

It is argued that the provisions of paragraph ninth must be read into paragraph eighth so as to vest the ultimate remainder of the residuary fund in the children who survived the testator, or in the estates of those who have died. It is urged that there was a gift of income but not of principal. There is a well-recognized rule of property in this State, however, that a gift of income without limitation is a gift of the principal. It should be noted that, upon the death of the widow, the testator provided: " I give, devise and bequeath my entire estate in trust  *  *  *; the income of said estate (except as much thereof as is provided for in Section 7, to be paid to Nellie Tuck and James H. Skillin), to be paid quarterly, share and share alike to such of my children as shall at that time, namely immediately upon the death of my wife, Elenore B. Tuck, be living, and to the descendants then living of such children of mine as shall have died before said date; such descendants to take

the share the parent would have received had he or she then been living."

No limitation as to the time of payment of the income was thereby imposed. Nor was express mention made of a gift of principal. An unrestricted gift of income with no express mention of the principal and without specification of the duration of time within which the income is payable vests the principal outright in the designated beneficiaries. (*Cammann* v. *Bailey*, 210 N. Y. 19; *Matter of Sackett*, 201 App. Div. 58; *Hatch* v. *Bassett*, 52 N. Y. 359.) By the application of this rule to the will here the principal and income passed to a class of beneficiaries comprising his children or their descendants who survive his widow.

The testator's dominant purpose was clearly to take care of his descendants after the death of his widow. Only in the event of her death without descendants was the alternative disposition of the principal under the will to the charitable institutions to take effect. It is highly illogical to assume, therefore, that the testator intended, if his widow were survived by the descendants whom he so carefully described, to give the latter only the income, but if he left no descendants at the date of death of the widow, that he intended to bequeath the remainder to charities. His primary purpose was to make outright and absolute grants of the principal in proportions based upon the number of descendants as of the date of death of his widow under a stirpital distribution.

Legality rather than illegality must be presumed as part of the testator's purposes. If the trusts were held to continue during the lives of the descendants of the testator, after the death of the widow, it would destroy the testamentary plan and invalidity would result because of a suspension of the trusts for possible lives not in being. (*Matter of Horner*, 237 N. Y. 489.)

I hold, therefore, that the principal at the date of death of the widow shall vest in Henry Tuck if he survives, or in his descendants if he predeceases the widow. He is the sole presumptive remainderman.

Section 63 of the Real Property Law provides: " When, in consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate."

The purpose of this statute, as frequently stated, was to allow him who is to take a future estate also to take the income in the interim pending the vesting in possession of his estate, where such

income is not given to another. (*Central Union Trust Co.* v. *Trimble*, 255 N. Y. 88; *Matter of Kohler*, 231 id. 353; *Matter of Ossman* v. *Von Roemer*, 221 id. 381; *Matter of Harteau*, 204 id. 292; *Cochrane* v. *Schell*, 140 id. 516; *Matter of Middaugh*, N. Y. L. J. Oct. 20, 1934, p. 1364.) It is based " upon the presumption that the donor of property may naturally be supposed to intend that the income should go to the same person to whom he had given that out of which the income arises." (*Dodge* v. *Pond*, 23 N. Y. 69, 83.)

The statute has thus stepped in and directed the passing of the undisposed of income to the person presumptively entitled to the next eventual estate. The pertinent provisions of law become operative to carry out the testator's purposes. Under the testator's plan and under the operation of section 63 of the Real Property Law, Henry Tuck, as the sole presumptive owner of the next eventual estate, is, therefore, entitled to the payment of the income of one-fifth of the residuary trust in dispute here.

I overrule, as without merit, the contention that upon the remarriage of James H. Skillin the one-fifth share of the income previously paid to him became payable to the representatives of the estate of Rosamond T. Skillin. Rosamond T. Skillin was, under the terms of the will, entitled to the income only to the date of her death. Upon her death a different beneficiary was selected under the will as the recipient of that income, to wit, her husband. Upon the latter's remarriage the income became payable to the presumptive owner of the next eventual estate. There is nothing in the will, nor in the decisions of the courts of this State, which permits the payment of the income of a life beneficiary which has terminated by his death and is directed thereafter to be paid to another beneficiary to revert to the estate of the first beneficiary, unless there is an absolute vesting of the principal in such beneficiary. (*Matter of Pulitzer*, 148 Misc. 116; affd., 241 App. Div. 858; affd., 265 N. Y. 522.)

The decree to be submitted settling the account in this proceeding may contain appropriate provisions construing the will accordingly.