In the Matter of the Accounting of BERTHA L. DEVARONA, as Successor Trustee under a Deed of Trust between IGNATIUS M. DEVARONA and AMY B. DEVARONA, Respondent. FLORA DEV. MILLER et al., Respondents; JOSEPHINE L. DEV. WILLIAMS, Appellant.

First Department, November 1, 1948.

*Ambrose V. McCall* of counsel (*Eugene L. Garey* and *Frank X. Cronan* with him on the brief; *Garey & Garey,* attorneys), for appellant.

*John A. Anderson* of counsel (*James F. Carew* with him on the brief; *Anderson & Carew,* attorneys), for Bertha L. deVarona and Flora deVarona Miller individually, etc., respondents.

*Arthur Sherr,* guardian ad litem for Mary Burke and others, infant-respondents.

*Bernard Hershkopf,* referee, respondent.

VAN VOORHIS, J. This appeal is from the portion of a decree of judicial settlement which construes an *inter vivos* trust, established September 14, 1921, by the late Ignatius M. deVarona. The ambiguous clause states that the settlor has assigned, transferred and set over certain corporate securities to a trustee, who is directed " To take possession of the same and to collect and apply the net rents, issues and income thereof to the use of the party hereto of the first part [the settlor], during his natural life; and upon the further trust, upon the death of the party of the first part to collect and apply the net rents, issues and income of the aforesaid securities to the use of Edwin Ignatius deVarona, son of the party of the first part, for and during the term of his natural life and upon his death to transfer and pay over said net rents, issues and income to the issue then living of the said Edwin Ignatius deVarona per stirpes; and if he shall leave no issue him surviving then to and among his then surviving sisters, Bertha Luisa deVarona, Amy Belen deVarona, and Mrs. Flora deVarona Miller, and should any of these three sisters have died to the issue of the aforesaid dead sisters per stirpes and not per capita."

The difficulty with the trust arises, of course, in ascertaining what is to become of the principal upon the death of settlor's son, which has recently occurred.

Special Term has held, confirming the report of the referee, that by the language above quoted the settlor intended to dispose of the income during three successive lives, including his own, but that he did not choose to give away the principal, and intended that it should revert to his estate after he, and his son, and his son's children (or substitutes for the latter) should be dead. Appellant contends, with good reason as it seems to us, that the settlor never contemplated such an extraordinary development, but that his purpose was by this instrument to dispose of all of his right, title and estate in these trust funds, giving the principal (and not merely the income) by way of remainder to the persons who have been held to be merely a third set of income beneficiaries.

It seems clear from the language of the instrument and the surrounding circumstances that the order appealed from involves an unnatural and unwarranted interpretation of the settlor's object. There is no need to construe his declaration of trust so as to defeat his purpose by rendering it illegal. An instrument will not be construed to violate the statute against perpetuities unless that intent is unmistakably demonstrated (*Matter of Bruckheimer,* 193 Misc. 414, affd. 267 App. Div. 783, affd. 294 N. Y. 31).

It has been held in many decisions that a general gift of the income arising from personal property, making no mention of the principal, is equivalent to a gift of the property itself where no limitation of time is placed upon the payment of such income and the principal is not otherwise disposed of (*Hatch* v. *Bassett,* 52 N. Y. 359; *Locke* v. *Farmers' Loan & Trust Co.,* 140 N. Y. 135, 145 *et seq.; Matter of Sackett,* 201 App. Div. 58; *Matter of Tuck,* 165 Misc. 359, affd. 256 App. Div. 971, affd. 281 N. Y. 697; *Matter of Weinstein,* 176 Misc. 592; *Matter of Feldhus,* 165 Misc. 122; *Matter of Harris,* 138 Misc. 287, and cases cited).

This rule is recognized in the referee's report, but it is said that its origin in the presumption against intestacy in the case of wills renders it inapplicable to trusts *inter vivos*. No cases are cited to sustain this distinction, which could not exist in the case of a deed of trust if an intent on the part of the settlor can be discerned to dispose of his entire estate in the property which is the subject of the trust. In one of the cited cases the established rule was applied to such trusts (*Locke* v. *Farmers' Loan & Trust Co.,* 140 N. Y. 135, 145).

In Scott on Trusts (Vol. 1, § 128.2, p. 668) it is stated: " In many cases it has been held that the beneficiary is entitled to the entire beneficial interest even though the trust instrument speaks only of the payment of income to him. Where there is a gift of income without limitation of time, express or implied, there is a gift of the entire beneficial interest." Professor Scott did not here distinguish between testamentary and *inter vivos* trusts in this respect, and the language of his text applies to both of them.

To the same effect is section 128 of the Restatement of Trusts.

An examination of the language of the present deed of trust can leave no reasonable doubt that the settlor considered that he was disposing of his entire property rights in these securities. The structure of the trust is materially different from that involved in *Davies* v. *City Bank Farmers Trust Co.* (248 App. Div. 380) for example, where it was apparent that the purpose of the trust would be completed at the end of a single life in being, and from the trust in *Brown* v. *Quintard* (177 N. Y. 75) where a will expressly disposed of the principal of one quarter of the testator's residuary estate but left the other three shares unbequeathed. Here, in the final clause, not only did Mr. deVarona place no time limit on the payment of the " net rents, issues and income " to the issue of his son " per stirpes " (or their substitutes), nor did he otherwise dispose of the principal, but, if the order and decree appealed

from were given effect, it would mean that he intended that after three generations had been gathered to their fathers the principal would revert to his own modest estate, which he must have known would, in all probability, have been long since settled and forgotten.

" Laymen would have no difficulty in sustaining a bequest by implication from the language in which the decedent expressed his testamentary intent. Courts should not, by self-imposed impotence, not required by the precedents, be less efficacious. They should give effect to plainly discernible, though ineptly expressed, testamentary intent." (*Matter of Selner,* 261 App. Div. 618, 623, affd. 287 N. Y. 664.) The same rule should be applied in construing deeds of trust.

Conceding that the wits of the draftsman of this document wandered when he arrived at the contingency of the death of the second life income beneficiary, it is plain that the intention was to dispose of the corpus rather than merely of the income in that event. The phraseology employed is different from that which gives the income to the first two life beneficiaries. There, in each instance, the trustee is directed " to collect and apply the net rents, issues and income thereof to the use of the party ⁑ ⁑ ⁑." The income was given to the second life beneficiary " upon the further trust ", until he died. Upon the death of the second life beneficiary, however, there is no " further trust," but the trustee is to " *transfer and pay over* said net rents, issues and income to the issue then living of the said Edwin Ignatius deVarona per stirpes; and if he shall leave no issue him surviving then to and among his then surviving sisters, Bertha Luisa deVarona, Amy Belen deVarona, and Mrs. Flora deVarona Miller, and should any of these three sisters have died to the issue of the aforesaid dead sisters per stirpes and not per capita " (italics supplied). The finality of this disposition is manifest. What settlor or legal draftsman would contemplate paying income only to such remote and unascertained beneficiaries, some of whom were not yet in being? The idiom of thought of the lawyer who phrased the document is shown by the use of the expression " per stirpes ", and by the sentence structure, which is inappropriate to the disposal of income. It is the language customarily used by a lawyer when disposing of a remainder.

The direction to the trustee " to transfer and pay over " is especially significant. If income were all that had been intended to be covered, there would be no transfer. The third life beneficiary or beneficiaries would receive only such income as might accrue subsequent to the death of the second life beneficiary,

and the trustee would have been directed to " collect and apply " it, as in the case of the first two life beneficiaries, to be continued for so long as there was a " further trust "; there would be no transfer of anything while the trust was still in existence. " Transfer " was the same word which had been employed in assigning these securities in the beginning from the settlor to his trustee. Here they were to be transferred to his remainder-men. In the mind of the draftsman, a " transfer " marked both the beginning and the end of the trust.

The circumstance that after declaring this trust the settlor executed a codicil to his will revoking bequests of $2,000 to his son and the latter's infant daughters, for the reason that " I have already created a Trust Fund for the benefit of my son, Edwin Ignatius deVarona ", tends to indicate that he expected his son and his son's children to benefit from the trust to the exclusion of settlor's three daughters (respondents on this appeal), who were left the entire residuary estate under the will. However equal or unequal an ultimate distribution this may have involved between settlor's son and his daughters, no argument can be made that settlor's purposes would be better carried out by voiding the trust so as to benefit his daughters, inasmuch as he made clear by the trust instrument, whether it be valid or otherwise, that he did not desire his daughters to benefit in any respect from the trust funds until after the death of his son's children. He undoubtedly realized that, in the ordinary course of human life, this would mean that his daughters would not live to participate in said funds in any manner whatsoever.

The order appealed from should be reversed and the decree modified so as to construe the trust as giving the remainder to the persons enumerated in the instrument as entitled to benefit upon the death of the settlor's son, Edwin Ignatius deVarona. The allowances should be affirmed, but an allowance of $1,000 should also be made to appellant's counsel, payable out of the fund.

Peck, P. J., Glennon and Callahan, JJ., concur; Dore, J., dissents and votes to affirm the order and decree appealed from, for the reasons stated in the report of the referee, adopted by the court at Special Term.

Order reversed and the decree modified so as to construe the trust as giving the remainder to the persons enumerated in the instrument as entitled to benefit upon the death of the settlor's son, Edwin Ignatius deVarona, the allowances affirmed and an allowance of $1,000 made to appellant's counsel, payable out of the fund.