S. Samuel Di Falco, S.
The petitioner, as the executor under the testator’s will and as the trustee of the trust created by the nineteenth article of that instrument, is accounting in both of these capacities and requests a construction of the nineteenth article, authority to abandon certain securities which he deems to be worthless and for directions respecting the payment of income taxes. Objections interposed to the account raise construction issues in respect of the fifth and twenty-third articles of the will.
The nineteenth article of the will created two trusts. The portions of that article which are pertinent to its construction read: “I give and bequeath to my Trustee hereinafter named *112 any and all real estate owned by me in the State of Florida, including any- farm property or leases of real property that I may own at the date of my death in cooperation with F. C. Peters and his associates in the State of Florida and any and all shares of stock which I may own in any cooperative organization for such enterprises and any interest which I may have in said properties IN TRUST NEVERTHELESS, to divide the said property into two portions, one portion which shall be equal to my interest in said Florida properties included in Account #21 in my said books and a second portion representing the three hundred (300) shares of Farsouth Growers Cooperative Association now standing in my name and not included in so-called Account #21 in my books of account, and I direct my Trustee to pay over the income of said first portion of the said property, being an amount equal to my interest in said Florida properties as a part of my interest in the so-called Account #21 on our books to my son * * * and I direct my said trustee to pay over the net income of the said second portion of the said property including the three hundred (300) shares of Farsouth Growers Cooperative Association now standing in my name and not included in so-called Account #21 in my books of account to my niece.”
The problem of construction arises in the allocation of assets between the two trusts created in the foregoing provisions. At the date of the testator’s death on December 21, 1951, there were 560 shares of Farsouth Growers Cooperative Association in the testator’s name and there also were certain agreements between the testator and others relating to property rights in Florida. There then was not a current account designated No. 21 in the testator’s book. If the will were to be regarded as speaking as of the time of the testator’s death, a question of ademption would exist but it is quite evident that this testator had in mind the extent and nature of his assets at the time he executed his will and that in allocating assets between the two trusts, and particularly in referring to account No. 21, he was referring to the condition of his assets at the time the will was signed. It follows that his intention is to be ascertained by what was in his contemplation at that time (Rogers v. Rogers, 153 N. Y. 343; Matter of Hoffman, 201 N. Y. 247; Matter of Phelps, 184 Misc. 278, affd. 269 App. Div. 768, affd. 295 N. Y. 834).
The relevant facts are not in dispute. In April, 1950, when the will was drawn, the testator and eight other persons were engaged in a joint undertaking. The testator managed this enterprise and recorded its financial affairs in his books under *113 the designation account No. 21. Prior to the initiation of this venture the testator was the record holder of 560 shares of Farsouth Growers Cooperative Association and in setting up account No. 21 in his books he allocated 210 shares of that stock to that account but he did not cause any change of ownership to be recorded in the stock book of the corporation. The testator’s interest in account No. 21 was approximately 51% and his secretary held a 25% interest therein. Shortly after the will’s execution account No. 21 was closed out and all of its assets were liquidated with the exception of the Farsouth stock. In connection with such liquidation the testator bought out the interests of all the participants other than his secretary and in so doing he reacquired the 210 shares of Farsouth stock which he had previously allocated to the account. The testator and his secretary thereupon entered into an agreement which recited that all the other investors had been paid off and that only the testator and his secretary retained an interest in the cooperative enterprise known as Farsouth Growers Cooperative Association. This agreement, which was in the form of a letter written by the testator and accepted by the secretary, then provided:
“ I am holding in my name 560 shares in that association, with whatever rights in leased lands or other operations are held therewith, all being in my name.
“ Tour interest in the whole is a 9% interest. Inasmuch as this interest has never been transferred out of my name on the books of the Company, I am writing this letter to make your interest clear and to establish what shall happen in the event of the death of either you or me. I am agreeing with you now that in the event of my death or of your death, either I or my estate shall pay to you or your estate in cash 9% of the total then fair value of the interest in the Farsouth Growers Cooperative Association, and any affiliated properties.” The agreement further provided that in the event the cash amount to be paid to the secretary should be in dispute the value of the secretary’s interest should be fixed by three appraisers.
Although the testator at his death was the record holder of 560 shares of Farsouth, the executor has presented a question as to the method of constituting the trust created by the nineteenth article in view of the agreement between the testator and his secretary. The bequest to the trustee is described as all real estate in Florida including property and leases owned in conjunction with one Peters and all shares of stock in any co-operative organization. The testator’s direction is to divide *114 this property into two portions in order to create two trusts, the first for the benefit of his son and the second for the benefit of his niece. The text fixing the extent of the first portion reads: ‘ ‘ one portion which shall be equal to my interest in said Florida properties included in Account #21 in my said books ”, The ambiguity of the testator’s language would permit the argument that the trust for the testator’s son was to be measured by the testator’s actual interest in account No. 21, which would be a 51% participation in that account, but the parties who appeared in this proceeding are in agreement that the testator intended the trust for his son to be measured by at least the amount of the testator’s property which he contributed or allocated to account No. 21. The construction accepted by the parties finds support in the testamentary direction pertaining to the payment of trust income wherein the will provides: “I direct my Trustee to pay over the income of said first portion of the said property, being an amount equal to my interest in said Florida properties as a part of my interest in the so-called Account #21 While the last-quoted language is not free from ambiguity, a reading of it in conjunction with the earlier definition of the portion intended to constitute the son’s trust requires the conclusion that the testator intended the first portion to be equivalent to the properties which he had consigned to account No. 21 irrespective of the interest, if any, which he retained in such properties subsequent to the time when they became an asset of the account. It is determined that, with respect to the Farsouth stock, the testator was referring to the 210 shares which he had allocated to account No. 21 and not to his actual interest in that account. These 210 shares of stock or their equivalent value were intended to be within the portion of the bequest comprising the principal of the son’s trust.
The principal of the niece’s trust is defined in the will as a portion ‘ ‘ representing ’ ’ the 300 shares of Farsouth standing in the testator’s name and not included in account No. 21. The direction for payment of the income of this trust reads: “ to pay over the net income of the said second portion of the said property including the three hundred (300) shares of Farsouth Growers Cooperative Association now standing in my name and not included in so-called Account #21”. This direction would seem to envisage that 300 shares of Farsouth, rather than their equivalent in other property or cash, were to be in this trust. There is also an intimation that additional property would be included in the trust but neither the amount nor the character of this property is defined either in the direction for the payment of income or in the earlier direction for division *115 of the trust bequest into two portions. The most that can be learned of the testator’s intention in this regard is that the niece’s trust was to contain 300 shares of Farsouth.
At this point in the analysis of the will it can be said that the trustee would be acting in conformity with the will if he were to allocate 210 shares of Farsouth to the son’s trust and 300 shares of Farsouth to the niece’s trust. The testator held 560 shares of the stock in his name at the time of his death but it is contended that a total of 510 shares may not be allocated to the trusts because the testator’s holding in the stock was subject to a 9% interest of his secretary which entitled the latter to 50.4 shares of the stock. This contention does not conform to the facts. The secretary did not have a right to 50.4 shares. His interest under his agreement with the testator was a right to payment in cash of 9% of the fair value of the 560 shares held by the testator. It is clear that the purpose of the testator’s agreement with his secretary was to avoid a liquidation of the shares in the event of the testator’s death. If the secretary at some time had a claim to shares of stock by reason of his interest in account No. 21, and it is not clear that he could require payment of that interest in stock, his explicit agreement made subsequent to the liquidation of account No. 21 was to accept a cash payment from the testator’s estate. The secretary was a creditor of the estate and, at least so long as funds were available from the estate to pay his claim, he had no claim to or against the shares of stock.
It is suggested that the testator intended to dispose of his entire holding of Farsouth stock by the nineteenth article of his will. The initial bequest to the trustee would indicate such an intention but the unfortunate fact is that the directions for division of the bequest into two portions dispose of a total of 510 shares only. The necessary consequence is that the excess of 50 shares passes as residuary property.
A further question of construction arises with respect to the fifth article of the will which bequeaths the testator’s apartment, most of the apartment’s contents and certain oil paintings to the testator’s niece. The final sentence of that article reads: “ I further give and bequeath to my said niece, Audrey Jane Higginson Downes, all shares of capital stock and any other interest held by me in the corporation known as Pepperidge Farm, Inc., Norwalk, Connecticut, or the proceeds of the sale thereof Two hundred fifty shares of the stock so bequeathed were owned by the testator at the date of his will. This stock was redeemed by the corporation in the testator’s lifetime and he deposited the proceeds of redemption in an account in a *116 Florida bank. Withdrawals from the account were made by the testator from time to time and at his death a balance of $8,299.84 remained in the account. The question raised is whether the testator’s niece is entitled to the full redemption value of the Pepperidge shares, or only to the unexpended balance of the redemption proceeds as though there was an ademption of the legacy. The gift of the shares of stock was a specific legacy and when such shares ceased to exist as property of the testator the gift of such shares failed. Had the testator limited his bequest to the shares alone without making any reference to the proceeds of their sale it would be beyond dispute that the bequest had been adeemed (Matter of Ireland, 257 N. Y. 155, 158-159). Here the testator, in apparent anticipation of the fact that the shares might be disposed of by him in his lifetime, bequeathed not only the shares but ‘ ‘ the proceeds of the sale thereof ”. This quoted text of the will is a plain declaration that in the event of a sale of the shares the proceeds of sale be substituted for the gift of the stock. Any effort to draw a distinction between a sale of the shares and their redemption by the corporation would be equivocation aimed at thwarting the obvious intent of the testator to bequeath the stock if it existed and its proceeds if it had been liquidated. The fulfillment of this testamentary purpose depends entirely upon the extent to which the proceeds of redemption can be traced and identified. The legatee is entitled to so much of the proceeds as were kept intact and are distinguishable from the other assets of the testator (Gardner v. Printup, 2 Barb. 83; Hopkins v. Gourand, 23 N. Y. S. 189, 3 Misc. 619; Hoffmann v. Steubing, 49 Misc. 157; Matter of Drake, 121 Misc. 769; Matter of Gylystrom, 172 Misc. 655; Matter of Roth, 183 Misc. 834). It appears from the executor’s account and the pleadings of other parties that the amount on deposit in the Florida bank at the testator’s death is identifiable as the unexpended balance of the sum received by the testator upon the redemption of the stock but if a fact issue does exist as to the identification of this balance, any interested party may apply for a hearing on that issue.
The second subdivision of the twenty-third article of the will attempts to create trusts for the children of the testator’s daughter and four named persons. This subdivision is replete with ambiguity but the sole question raised in this proceeding concerns the number of trusts which the testator intended to create. This subdivision of the will was designed to be a disposition of two thirds of the residuary estate. The testator’s *117 direction is to divide this portion of the residuary “ into as many equal shares as there shall be surviving children of my daughter, Jean Caldwell von Hubler, and the said Jessie A. Higginson, Thomas C. Jessup, Audrey H. Downes and William J. Higginson III., and I direct my said Executor and Trustee to hold one of such shares in trust, invest and reinvest the same and pay over the net annual income to each of the said children of my said daughter, and to hold one of such shares in trust for the said Jessie A. Higginson, Thomas C. Jessup, Audrey H. Downes and William J. Higginson III me surviving The fact is that the testator’s daughter was survived by one child and the problem is whether under this circumstance the testator intended that there be a division into two shares or into five shares. It would seem that, if any significance is to be attached to the testator’s direction that a division be made to the number of surviving children of his daughter, he contemplated a separate trust for each child and that his subsequent direction to hold one of such shares in trust * * * and pay over the net annual income to each of the said children ’ ’ meant that each child would receive the income of a separate share and consequently that there would be trusts equal in number to the number of surviving children. A logical sequence is that a direction to hold one of such shares in trust for the four individuals mentioned by name meant that a separate trust was to be set up for each individual. Some light is shed by the further direction reading “ if one of the other named beneficiaries of such shares shall die leaving issue, to pay the principal of the said trust fund to such issue ’ ’. It seems quite obvious that the last-quoted language was not intended to effect a termination of a single trust of which a number of persons would be income beneficiaries but instead to effect only a termination of the separate trust of which the issue’s dead parent was named as beneficiary. Accordingly it is held that the residuary portion disposed of in this subdivision of the will was properly divided into five equal shares.
There may be a more fundamental question of construction existing in this subdivision of the will but the parties appear to read this provision as containing both adequate directions as to the duration of the trust for the testator’s grandchild and a disposition of the trust remainder (cf. Matter of deVarona, 274 App. Div. 303, affd. 299 N. Y. 726).
It is held that the legal fee of the attorneys for the trustee is properly allocable between the two trusts created by the nineteenth article of the will in proportion to the respective principal values of these trusts. The application for authority to *118 abandon the securities listed in the executor’s account as worthless is granted. A direction from the court regarding the payment of income taxes is not required.
Submit decree on notice construing the will and settling the account.